[L. A. No. 18199. In Bank. Apr. 20, 1942.]

RALPH W. EVANS, as State Building and Loan Commissioner, etc., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Alan G. Campbell, Wood, Crump & Rogers and Guy Richards Crump for Petitioner.

J. H. O'Connor, County Counsel, Douglas DeCoster, Deputy County Counsel, Mathes & Sheppard, William C. Mathes and J. Stanley Mullin for Respondent.

SHENK, J.—The petitioner, as Building and Loan Commissioner, applied for the writ of mandamus to direct the respondent superior court to recall and quash a writ of execution levied on the assets of Pacific States Savings and Loan Society to satisfy a judgment rendered for the plaintiffs, Terry et. al., in an action against the society. The facts are not disputed.

On September 30, 1937, Terry and others commenced an action against Pacific States Savings and Loan Society to recover sums claimed to be due on certain fidelity definite term investment certificates and fidelity participating certificates of the society which matured May 23, 1936.

March 4, 1939, the petitioner took possession of the property and assets of the society pursuant to section 13.11 of the Building and Loan Association Act. (Stats. 1931, page 483, as amended, Deering's Gen. Laws, Act 986.) The next day pursuant to section 13.12 of the act the society commenced an action to enjoin further proceedings on the part of the commissioner.

June 12, 1939, the plaintiffs in the Terry action recovered judgment for $15,696.71 and on August 23, 1939, execution was levied, but nothing has been paid on the judgment by virtue of the levy.

October 30, 1939, pursuant to section 13.16 of the act, the commissioner filed a notice of determination to liquidate. August 2, 1941, the commissioner in the Terry action moved the respondent court to recall and quash the writ of execution on the ground that said section 13.16 forbade the lien of said judgment and any execution thereon. The motion was denied, and on September 4, 1941, the present proceeding was commenced for the purpose of compelling the respondent court to recall and quash the writ of execution. On December 29, 1941, the court in the injunction proceeding filed by the society on March 5, 1939, found for the commissioner and entered its judgment of dismissal.

The foregoing statement of facts is sufficient upon which to resolve the problem here involved. Section 13.16 of the act provides in part: "The determination by the commissioner to liquidate any association, evidenced by filing writ-

ten notice of such determination with the court shall operate to stay or dissolve any or all actions or attachments instituted or levied within thirty days next preceding the taking of possession of such association by the commissioner, and pending the process of liquidation as herein provided no attachment or execution shall be levied or lien created upon any of the property of such association.'' ■ The respondent court had the power and it was its duty to recall the writ of execution if it was improvidently issued. (*Creditors Adjustment Co.* v. *Newman,* 185 Cal. 509, 511 [197 Pac. 334].)

If the taking of possession under the act was a part of the process of liquidation within the meaning of the quoted provision, as contended by the petitioner, then the jurisdiction of the respondent court might be exercised in but one way, namely, by granting the motion to recall and quash the writ. ■ The petitioner's remedy by appeal from the order denying his motion to recall the writ, in a case of this character, may not be deemed sufficient to preclude a consideration of the merits of the present application and the issuance of the writ if the application should be found to be meritorious. (See *Betty* v. *Superior Court,* 18 Cal. (2d) 619 [116 P. (2d) 947].)

■ Since the Terry action was brought more than thirty days prior to the taking of possession, it was not stayed by the above provisions of section 13.16 of the act. But whether the judgment or execution in that action created a lien depends upon the answer to the question of when under the act the process of liquidation commences. By section 13.11 of the act the commissioner is empowered to take possession of the property, business and assets of the association by reason of the conduct of its affairs in an injurious and unsafe manner, or for other reasons therein stated, and he may ''retain such possession until such association shall with the consent of the commissioner resume business, or until its affairs be liquidated.''

By section 13.12 any association affected by the commissioner's order of possession may within thirty days apply to the superior court to enjoin further proceedings. In the injunction proceeding the court may dismiss the application or enjoin the commissioner from further proceedings and direct him to surrender the business and assets to the association. By section 13.13 the commissioner has certain specified powers upon taking possession and, unless he is enjoined from further proceedings, he may proceed to liquidate the affairs

of the association, "as hereinafter provided." Section 13.16, in addition to the above quoted provision, enumerates the general powers of the commissioner in liquidating the association's affairs. There is also provision for ratable distribution of dividends from the liquidation of assets; for a hearing on the payment of a final dividend, and the closing of liquidation with the return of any balance to the shareholders after payment of all claims. In practice, when no injunction has been applied for, and at the end of thirty days following the taking of possession, the commissioner files his notice of determination to liquidate and proceeds immediately to liquidate in accordance with the provisions of the act. The question whether a judgment rendered (in an action not stayed), or execution levied during the thirty-day period, created a lien upon the property of the association will first be considered. Undeniably it may be said that the thirty-day period is provided as an automatic stay of the exercise of the powers of liquidation by the commissioner, as distinguished from a stay of the process of liquidation, in order to give the association an opportunity to obtain an injunction. Absence of justification for the taking of possession may then be shown. This is so for the reason that possession under the act is primarily for the purpose of liquidating the affairs of the association. True, it may develop that liquidation will not follow, but that consequence does not alter the obvious fact that under the act possession is a prerequisite to liquidation and must be deemed to be the first step in that process. Since it is such a prerequisite it should be considered as part of the process of liquidation in a case when an injunction proceeding has been commenced as well as in a case where the association has not applied for an injunction; and indeed with greater necessity in the former case inasmuch as the delays which might ensue upon an application for injunction might defeat the purposes of the act. In this connection it is significant that, if no injunction had been sought and the commissioner had filed notice of his determination to liquidate upon the expiration of the thirty-day period, and if the judgment in the Terry action had been entered thereafter, no execution could have issued on said judgment by virtue of the provisions of section 13.16 of the act. That section operates to prohibit the levy of any execution pending the process of liquidation. It makes no exception of an action which was commenced more

than thirty days prior to the taking of possession by the commissioner. Obviously it could not have been the legislative intent to permit such an advantage to accrue to some creditors by reason of the delays attending an injunction proceeding. Therefore one of the ends to be achieved by the legislation, namely, the ratable distribution of assets among creditors, furnishes support for our conclusion herein. In *Crane* v. *Pacific Bank,* 106 Cal. 64 [39 Pac. 215, 27 L. R. A. 562], concerning somewhat similar legislation, it was said that if the Bank Commissioners' Act there involved took banks out of the operation of the Insolvency Act to procure equitable distribution of its assets among its creditors, it was equally clear that it was not intended that the moment a bank closed its doors its assets should become the prey of the first creditors who might obtain the issuance of process. If the process of liquidation were deemed not to commence until, for instance, an adjudication of dismissal in an injunction proceeding, it would be a simple matter for the association to apply for an injunction and thus effect a period of delay within which actions not stayed could be prosecuted to judgment with resulting preferment, while in the absence of injunction proceedings judgments would not create a lien on the association's property.

■ A judgment lien is a statutory right which attaches to property not exempt from execution. (*Ackley* v. *Chamberlain,* 16 Cal. 181, 183 [76 Am. Dec. 516].) The right thus created may also be taken away by statute, altogether or conditionally, as in cases of insolvency. ■ By the enactment of the Building and Loan Association Act the Legislature has seen fit to withdraw the right of a judgment lien and execution process from judgment creditors in certain cases during the process of liquidation. The only effect of the judgment in an action not stayed by the provisions of the act, such as in the Terry case, would be an adjudication of the debtor and creditor relation and of the amount due.

In *Evans* v. *Superior Court,* 14 Cal. (2d) 563, 572 [96 P. (2d) 107], this court referred to the sections of the act here under consideration and related sections and said: "The above mentioned sections of the act should be considered together (*Yager* v. *Superior Court,* 139 Cal. App. 84 [33 P. (2d) 451]), and when so considered it is apparent that the Legislature intended to provide a comprehensive plan for the supervision of building and loan associations under certain conditions. . . . It has been held that a liberal rather than a

strict construction should be placed upon said sections in determining the powers of the commissioner. . . . Respondents argue for a strict construction of the word 'liquidation' in this connection but it is apparent that the taking possession by the commissioner under section 13.11 is a necessary and integral part of the process of liquidation. . . .''

It is true that the question now to be determined is not the question which was involved in that proceeding. But the foregoing quoted declarations were necessary to the determination of the question there involved, and we are not now presented with authorities or argument which would justify a disapproval of them.

The respondent relies on *Lanz* v. *Fresno L. & S. Bank,* 125 Cal. 456 [58 Pac. 63], and *Argues* v. *Union Savings Bank,* 133 Cal. 139 [65 Pac. 307]. In the Lanz case the plaintiff had been overlooked in the distribution of the bank's assets by the trustees in the process of liquidation. It was held that he could recover judgment on his claim. In the Argues case it was held that an ordinary action for the collection of a debt could not be maintained against a bank while it was in process of liquidation, and that the only permissible action would be one against the liquidating trustees for some dereliction of duty. The Lanz case involved such a permissible action. Neither case therefore is inconsistent with our interpretation of the provisions of the act here involved.

Let the peremptory writ of mandamus issue as prayed.

Curtis, J., Carter, J., and Traynor, J., concurred; Houser, J., concurred in the judgment.

Respondent's petition for a rehearing was denied May 18, 1942.