**FIDELITY SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**FEDERAL HOME LOAN BANK BOARD, et al., Defendants.**

No. C–82–1592 SW.

United States District Court,
N. D. California.

May 24, 1982.

On Removal of Receiver June 3, 1982.

On Remedies June 4, 1982.

---

**1376**

Barry D. Hovis, Thomas G. Reddy, Angell, Holmes & Lea, San Francisco, Cal., Palmer Brown Madden, Stephen L. Kostka, Linda Agerter, Van Voorhis & Skaggs, Walnut Creek, Cal., for Plaintiff Fidelity Savings and Loan Assn.

Kirkpatrick, Lockhart, Hill, Christopher & Phillips, George L. Christopher, Ronald W. Stevens, Washington, D. C., Pillsbury, Madison & Sutro, Charles B. Renfrew, James N. Roethe, San Francisco, Cal., for defendant Federal Home Loan Bank of San Francisco.

Latham & Watkins, Alan N. Halkett, Alan B. Clark, Laurence Hummer, Los Angeles, Cal., for defendants Federal Home Loan Bank Board, Richard T. Pratt, Federal Savings and Loan Insurance Corp., and H. Brent Beesley.

### MEMORANDUM AND ORDERS

SPENCER WILLIAMS, District Judge.

Plaintiff Fidelity Savings and Loan Association (Fidelity) brings this action to remove the Federal Savings & Loan Insurance Corporation (FSLIC) as receiver of its assets and for such other equitable relief as it deems is necessary and permissible under the statute to place it in the same position it occupied on the date of the appointment. Defendants Federal Home Loan Bank Board (FHLBB) and FSLIC filed a motion for summary judgment on the ground that

there are no material issues of fact concerning the satisfaction of the statutory prerequisites for appointment of a receiver. After careful consideration of the excellent and exceedingly thorough briefs of all parties, the court concludes that the motion must be denied at this time. The following constitutes a brief explanation of the court's reasoning.

## APPLICABLE LEGAL STANDARDS

The jurisdiction of this court is predicated on Title 12 U.S.C. § 1464(d)(6)(A) which provides that the FHLBB may appoint a receiver for a savings and loan association *ex parte* and without notice when it feels, in its opinion, that an adequate ground for such appointment exists under the law. The statute specifically outlines the association's remedy:

> In the event of such appointment [of a receiver], the association may, within thirty days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia, for an order requiring the Board [FHLBB] to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver.

The statute further spells out that an action under the above-quoted statute is the sole and exclusive method by which an association may affect removal of the receiver. 12 U.S.C. § 1464(d)(6)(C).

When assessing the propriety of the FHLBB's exercise of power to appoint a receiver, the court must examine the statutory requirements for such an appointment. Title 12 U.S.C. § 1729(c)(2) states that the FHLBB shall have exclusive power and jurisdiction to appoint the FSLIC as the receiver of an insured state savings and loan association if it determines:

> (A) that . . . (ii) an insured institution (other than a Federal savings and loan association) has been closed by or under the laws of any State;

> (B) that one or more the grounds specified in paragraph (6)(A) of section 1464(d) of this title, existed with respect to such institution at the time a conservator, receiver, or other legal custodian was appointed, or at the time such institution was closed, . . . ; and

> (C) that one or more the holders of withdrawable accounts in such institution is unable to obtain a withdrawal of his account, in whole or in part;

Section 1464(d)(6)(A), referred to in subsection (B) of section 1729(c)(2) permits the appointment of a receiver whenever the association is in "an unsafe or unsound condition to transact business."

## STANDARD OF REVIEW

The parties to this action dispute the standard by which the court is to review a determination by the FHLBB that the three requirements of section 1729(c)(2) have been met. Fidelity, on the one hand, seeks a trial *de novo* on both the existence of facts supporting a 1729(c)(2) determination *and* the exercise of that jurisdictional power by the FHLBB. On the other hand, FSLIC and the FHLBB argue that the court's power of review is limited to a *post facto* adversarial hearing on whether the statutory grounds were present.

■ A reasoned analysis of this question begins and ends with an inquiry into the meaning of the term "on the merits" contained in the grant of jurisdiction contained in section 1464(d)(6)(A). Initially, the court concludes, as did Judge Grady in *Telegraph Savings & Loan Ass'n v. Federal Savings & Loan Insurance Corp.*, No. 80 C 2792 (N.D. Ill., filed June 9, 1981), that this phrase necessarily implies that the court's power to review the FHLBB's determination is not bound by the normal limitations applicable to an administrative review of an agency's previous adjudication. *See* 5 U.S.C. § 706(2)(E). If it means nothing more, the term "on the merits" reveals that a proceeding under this statute is more in the nature of a *de novo* review than an appellate review. *Cf. Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 354–55, 81 S.Ct. 1570, 1573–74, 6 L.Ed.2d 890 (1961).

Clearly, the ordinary reasons calling for deference to an administrative decision are not present in the instant situation. There were no adversarial hearings before the agency and there was no identifiable administrative record. *See generally Washington Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board*, 526 F.Supp. 343 (N.D.Ohio 1981). Moreover, the statute giving rise to the agency's jurisdiction in no way contemplates any limitations on this court's powers of review. The statute calls for an expedited hearing on the merits of the Board's decision and allows the court to reverse completely the appointment decision as opposed to remanding the case for further consideration.

■ Accordingly, the court concludes that, in light of the serious due process considerations, the plaintiff is entitled to a full adversarial hearing on the question whether the three prerequisites listed in section 1729(c)(2) were present in this action. As to this question, the court sits not as an appellate body but as independent reviewer of the evidence. Therefore, Fidelity must be accorded the opportunity to present evidence and cross examine witnesses on the question of whether the FHLBB's conduct met the statutory requirements. Because the agency's decision is entitled to a minimal presumption of correctness, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1970), the plaintiff bears the burden to show the agency's decision was incorrect by the weight of the evidence.

However, the court's power to reexamine the Board's decision is not unlimited. On the contrary, the normal rule that fundamental policy questions should be resolved by the legislative and executive branches and not by the courts applies with equal force to the present situation. *See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1977). This court is not to substitute itself for the Federal Home Loan Bank Board in the decision to *exercise* its jurisdic-

tion, if it is present. Rather, once the court determines that the three statutory prerequisites have been satisfied, it will not disturb the decision of the Board to exercise its jurisdiction unless there has been an abuse of discretion in the exercise of that power.

Therefore the issues before this court are (1) whether, when looking at all the evidence that was available to the Board and that information subsequently discovered, the three statutory prerequisites were satisfied; and (2) whether the Board's exercise of jurisdiction constituted an abuse of discretion.

## MOTION FOR SUMMARY JUDGMENT

■ The defendants have moved for summary judgment on the ground that all the facts demonstrate that the decision to appoint a receiver was premised on a supportable factual base. After careful consideration of all the briefs and arguments of counsel and all the evidence presently in the record, the court concludes that the motion must be denied at this time. Questions of fact remain as to Fidelity's financial condition at the time the receiver was appointed. Moreover, the questions of closure and unwithdrawable accounts require a further factual understanding before the questions can be resolved as a matter of law. Like many "fact-law" decisions (e.g. personal jurisdiction), the questions on closing and withdrawals can be resolved once all facts are properly presented to the court.

Accordingly, the court will bifurcate the trial and try the questions of closure and unwithdrawable accounts before the court reaches the issue of "unsafe and unsound condition." After all facts as to the closure and unwithdrawable accounts are presented, the court will determine these questions as a matter of law.

## CONCLUSION

IT IS HEREBY ORDERED that the defendants' motion for summary judgment be, and hereby is, denied without prejudice to being renewed at the conclusion of the first part of the bifurcated trial.

IT IS FURTHER ORDERED that the defendants' motion in limine is denied.

IT IS FURTHER ORDERED THAT the trial of this action be bifurcated trying the issues of closure, nonwithdrawable accounts and "unsafe and unsound condition" *seriatam.*

IT IS SO ORDERED.

## ON REMOVAL OF RECEIVER

### INTRODUCTION

This action raises extremely important questions concerning the timing of federal intervention in the seizure of a state savings and loan association and the degree to which the Federal Home Loan Bank Board (FHLBB) may manipulate the nature of a takeover so as to satisfy strict statutory prerequisites to such action. Resolution of these questions requires that the court examine the manner in which Congress balanced the need for prompt federal response to failing financial institutions against the need to protect such institutions from arbitrary or precipitous federal takeovers in violation of such institutions' due process rights.

■ After careful consideration of all the relevant facts and a thorough reading of the applicable legislative history, the court concludes that the FHLBB acted precipitously and overzealously in appointing a federal receiver for the plaintiff Fidelity Savings and Loan Association. No matter how well-intentioned or motivated by apparent economic necessity its actions, the FHLBB acted in violation of both the clear command of the applicable federal statute and the underlying policy which limited federal intrusion in the supervision of state associations. Accordingly, the court rules that the defendants failed to satisfy the statutory requirements and the receiver must be removed.

### FACTUAL BACKGROUND

The genesis of this action goes back to 1979 when the plaintiff Fidelity Savings and Loan Association (Fidelity) gambled that interest rates would fall and began selling large amounts of short-term paper to make long-term mortgage loans. Unfor-

tunately for Fidelity, the gamble proved unwise as interest rates rose sharply and it was forced to roll over its short term borrowing. As a result, Fidelity experienced severe financial difficulties due to the increasing spread between the high cost of money and the interest that it earned on its low-yielding mortgage portfolio.

Consequently, Fidelity began suffering large operating losses and experienced a substantial loss in net worth. In an attempt to cope with its financial problems, Fidelity borrowed some $1.3 billion from the Home Loan Bank of San Francisco (the Bank) between October, 1979 and March, 1982. The Bank predicated its loans to Fidelity on placing the association in a "special credit category" by which it was charged interest rate penalties and higher interest than other borrowing associations.

In late 1981 and early 1982, while Fidelity was pursuing administrative relief from the special credit program, the Bank's President, Milton Feinerman and other members of the Bank staff began making suggestions to the State Savings and Loan Commissioner, Linda Tsao Yang, that she should take possession of Fidelity due to its liquidity crisis. In addition, Richard Pratt, Chairman of the Bank Board, and H. Brent Beesley, Director of defendant Federal Savings and Loan Insurance Corporation (FSLIC), made requests early in 1982 that the Commissioner take possession of Fidelity. Each time, the Commissioner refused and recommended that other alternatives be explored.

On April 5, 1982, Fidelity was notified in writing that the Bank would not grant it any relief from the special credit program. Thereafter, on April 9, 1982, Fidelity filed a lawsuit against the Bank in this Court, No. C 82–1389 EFL, seeking recovery of the penalties and excess interest charges which totalled some $62.4 million. On that same day, the Bank's Executive Committee convened by telephone conference and, based in part on the massive "panic" withdrawals from Fidelity during the week of April 5, 1982, authorized Mr. Feinerman to advise the FSLIC that the Bank would not advance any additional funds to Fidelity unless FSLIC would guarantee such loans.

After FSLIC was notified of the Bank's decision, Mr. Feinerman and Mr. Beesley placed a conference call to Commissioner Yang to inform her that FSLIC would not guarantee any additional advances unless she acted to take possession of Fidelity and appoint FSLIC as receiver. Commissioner Yang engaged the federal officials in an hour long conversation in which she resisted State seizure and indicated that due to Fidelity's still present net worth she advocated an unconditional merger resolution. However, after further discussions, Mr. Beesley indicated that FSLIC was not concerned with protecting the shareholders' interests and that Fidelity's financial condition was so poor that a state receivership was the only acceptable solution. Faced with the situation where Fidelity would not receive any more money advances, the Commissioner testified that she had "no choice but to do what the Federal regulators wanted the State to do; to take possession of the institution and to appoint FSLIC the receiver." (Yang Deposition, p. 31, 11.19–22.)

The State Commissioner and the federal officials agreed that the State would take possession of the association at the close of business on Tuesday, April 13, 1982 and turn it over to FSLIC as state receiver. Commissioner Yang testified that she wanted to insure a smooth transition in such a manner that the depositors and the public were completely unaffected by the appointment of the state receiver. (Yang Deposition, p. 34, 11.6–14; p. 157, 11.16–23; p. 164, 11.22–27.) The Commissioner did not contemplate that the doors to the association would be closed and she stated that the language contained in the State's Order Demanding and Taking Possession was intended merely to facilitate the matching of the technical legal language between state and federal law. (Yang Deposition, p. 169, 11.6–13; p. 171, 11.3–5.)

The only step remaining in the well-orchestrated federal takeover of the state savings and loan association was the physical seizure of the association. Over the weekend, the federal regulators dispatched hundreds of federal bank examiners from all over the country to California to serve in their appointed outposts in individual branches. On Tuesday, April 13, 1982, a handful of federal and state officials entered the Fidelity offices in Oakland, California at precisely 4:40 p. m., twenty minutes before closing. With watches synchronized, the officials entered Fidelity's executive offices and served the papers "closing" the association at 4:47 p. m. According to the testimony of Mr. Ronald Taylor, an attorney for the FHLBB who was part of the operation in Oakland, different members of the takeover team fanned out to tell other employees in the building of the association's seizure. Mr. Taylor also testified that there was some question as to whether the regulators should bar all doors but such was not done because some Fidelity employees needed to go home. There is a dispute in the record as to whether all doors in all Fidelity offices actually were closed; however there is no dispute that the entire operation took less than thirty minutes.

Immediately thereafter, the State took possession of the business property and assets of Fidelity, Mr. Durkin, the Chief Deputy Savings and Loan Commissioner for the State of California, tendered the appointment as State receiver to FSLIC. Within a few moments later FSLIC terminated the State receivership by declaring itself to be the sole federal receiver based upon a series of resolutions that had been approved by the FHLBB the preceding day. At the same time, most of Fidelity's assets were transferred to a newly-created federal mutual association, Fidelity Federal Savings and Loan Association of San Francisco. This same mutual association has carried on the business from April 13, 1982 forward.

Shortly after the takeover, the plaintiffs brought this action pursuant to 12 U.S.C. § 1464(d)(6)(A) to remove FSLIC as receiver of its assets and for such other equitable relief as it deems is necessary and permissible under the statute to place it in the same position it occupied on the date of the appointment.

Pursuant to the mandate of the statute, this court established an expedited schedule for the trial of this action. After extensive discovery and the filing of numerous briefs on the legal and factual questions presented, the court on its own motion ordered that the issues of "closing" and "unwithdrawable accounts" be bifurcated and tried on the record before the court. *See* Fed.R.Civ.P. 42(b); *Richmond v. Weiner*, 353 F.2d 41, 44 (9th Cir. 1965), *cert. denied*, 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966).

## LEGAL STANDARDS

The jurisdiction of this court is based on Title 12 U.S.C. § 1464(d)(6)(A) which provides that the FHLBB may appoint a receiver for a savings and loan association *ex parte* and without notice when it feels, in its opinion, that an adequate ground for such appointment exists under the law. The statute provides:

> In the event of such appointment [of a receiver], the association may, within thirty days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia, for an order requiring the Board [FHLBB] to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver.

When assessing the propriety of the FHLBB's exercise of power to appoint a receiver, the court must examine whether the FHLBB met all the statutory prerequisites to such an appointment. Title 12 U.S.C. § 1729(c)(2) lists the three separate requirements that must be satisfied:

> (A) that . . . (ii) an insured institution (other than a Federal savings and loan association) has been closed by or under the laws of any State;
>
> (B) that one or more of the grounds specified in paragraph (6)(A) of section 1464(d) of this title, existed with respect to such institution at the time a conservator, receiver, or other legal custodian was appointed, or at the time such institution was closed, . . . ; and
>
> (C) that one or more of the holders of withdrawable accounts in such institution is unable to obtain a withdrawal of his account, in whole or in part;

In this part of the bifurcated trial, the court is concerned with independent requirements contained in subdivisions (A) and (C) above.

In determining whether the association was closed under the laws of the State of California,[1] the court must turn to the authority granted the Savings and Loan Commissioner under California law.[2] Section 9001 of the California Financial Code provides that the Commissioner may demand and take possession of the property, business and assets of an association if he or she determines that certain statutory conditions are present.[3]

---

1. All parties agree that the first alternative statutory precondition for creation of a *federal* receiver, i.e. the existence of a state receiver for 15 days, 12 U.S.C. § 1729(c)(2)(A)(i), was not met because the FHLBB appointed FSLIC the same day.

2. Since FSLIC originally accepted appointment as a state receiver, Cal.Fin.Code § 9103 subjects it to all the duties of the Commissioner, including any limitations applicable to the power to close the association.

3. Cal.Fin.Code § 9001 provides:

   The commissioner may demand and take possession of the property, business and assets of an association if any of the following occur:

   (a) The association does not comply with the order given pursuant to Section 9000, within the time specified therein.
   (b) It appears to the commissioner that the association is in an unsafe condition or is conducting its business in an unsafe or injurious manner such as to render its further proceeding hazardous to the public or to any or all of its investors.
   (c) The commissioner finds that the association's assets are impaired to such an extent that, after deducting all liabilities other than to its investors they do not equal or exceed the sum of the value of its outstanding shares and investment certificates and the amount set aside as a fixed and permanent capital of the association pursuant to Section 6456 of the Financial Code.
   (d) The association refuses to submit its books, papers, and accounts to the inspection

Once the Commissioner takes possession of an association, he or she "may retain possession . . . until the association resumes business with the consent of and subject to the conditions imposed by the commissioner, or until its affairs are liquidated." Cal.Fin. Code § 9002. While the Commissioner may perform such other acts as are necessary to protect the association (Cal.Fin.Code § 9010), he or she must, unless he or she has been enjoined or has previously returned the association for the resumption of business, proceed to liquidation. Cal.Fin.Code § 9011.

Finally, the powers of the Commissioner are subject to immediate judicial review. Section 9003 of the Financial Code provides:

> Whenever the commissioner takes possession of an association's property, business, and assets pursuant to this article, the association may within 10 days after the taking of possession commence an action in the superior court of the county in which the principal office of the association is located, to enjoin further proceedings.

It is also settled that the ten day period is provided as an automatic stay of the exercise of the powers of the Commissioner to liquidate the association. *Evans v. Superior Court*, 20 Cal.2d 186, 124 P.2d 820 (1942). Accordingly, the Commissioner is prohibited from undertaking any actions during the ten day period that would compromise the association's statutory right to challenge the seizure under state law. *Id.*

DISCUSSION

A. *Closing Under State Law*

■ The first statutory precondition for creation of a federal receivership in this case is that the association be closed under state law. 12 U.S.C. § 1729(c)(2). An examination of the relevant California statutes and common sense both compel the conclusion that as a state receiver of Fidelity, FSLIC's actions in "closing" the association for a matter of minutes is insufficient.

As a state receiver, FSLIC stood in the same shoes with the same statutory powers as the Commissioner. Cal.Fin.Code § 9103. California law grants the Commissioner the power to take and retain possession, to operate the business, to oversee a reorganization, to return the business to the association or to liquidate. Cal.Fin.Code §§ 9001, 9002, 9011. *Pacific States Savings & Loan Co. v. Hise*, 25 Cal.2d 822, 155 P.2d 809 (1945). However, nowhere do the statutes give the Commissioner the power to close an association and such power does not exist unless it is following a decision to shut down the business and liquidate.

The defendants argue that these California statutes impliedly provide the power to close an association. First, defendants contend that the clause in section 9002 that permits the commissioner to retain possession "until the association resumes business" necessarily implies the preexisting power to close. Such an inference does not follow logically from the language and context of the statute. These provisions in the Financial Code concern the power of the Commissioner to take possession and have his or her office run the business until liquidation. As an alternative, the Commissioner may continue the business until such time that he decides to return it to the association for its *resumed* management. Clearly, to imply the virtually unreviewable and irreversible decision to close would violate the California legislature's sensitivity to the due process rights of the association. *See* Cal.Fin.Code § 9003; *Evans v. Superior Court*, 20 Cal.2d 186, 124 P.2d 820 (1942).

Second, the defendants submit that the Commissioner acquires the power to close a seized association under Cal.Fin.Code § 9010 which permits "such other acts as are necessary or expedient to collect, conserve, or protect the association's business, property, and assets." To the extent the power to close is an implied power under section 9010, such authority cannot be exercised for ten days after the Commissioner

of the commissioner or any of his examiners, deputies, or assistants.

(e) Any officer of the association refuses to be examined upon oath concerning the affairs of the association.

first takes possession in order for the association to seek judicial review under section 9003. The California legislative scheme, like its federal counterpart embodied in 12 U.S.C. § 1729(c)(2), evidences a particular sensitivity to the due process rights of associations subject to *ex parte* governmental takeovers. Accordingly, the California statute allows for an automatic ten day stay of any commission action pending judicial review. Cal.Fin.Code § 9003; *Evans v. Superior Court, supra.* Therefore any power to close implied under section 9010 could not be exercised if to do so would deprive the association of its statutory right to state court review.[4] Since in the instant case, there could have been no valid closure for ten days after the appointment of the state receiver, the first requirement of section 1729(c)(2) was not met.

In summary, therefore, the Commissioner lacked the statutory authority to close Fidelity under either the express or implied provisions of the California Financial Code. In fact, the Commissioner's office has acknowledged that she lacked the authority to close a state savings and loan association. (Durkin Deposition, pp. 43–44.) Finally, even if the Commissioner did somehow acquire an implied power to close, the evidence demonstrates that in this case Commissioner Yang did not intend to affect a closure and was assured that the FSLIC receivership would not result in any operation of the association's daily business.

### B. *Closing Under Federal Law*

■ The defendants basic argument under section 1729(c)(2)(A)(ii) is that any time FSLIC is appointed a state receiver it can simply declare an association "closed" (or enact the drama of closing all doors for one or two minutes) and have the FHLBB appoint it as a federal receiver. Such a reading would emasculate the independent and well-thought out prerequisites to federal intervention in the affairs of state savings and loan associations.

Section 1729(c)(2) was adopted as part of the Bank Protection Act of 1968, Pub.L.90–389, 82 Stat. 294 (the Act). Before the passage of the Act, no federal regulatory body had the power to place a state-chartered savings and loan association in federal receivership. Under the old law, the FSLIC was only authorized to accept an appointment as receiver when the state association was in default and the receiver had been appointed for the purpose of liquidation. *See* 12 U.S.C. § 1724(d).

In 1968, Congress concluded that, in order to enable FSLIC to make prompt payments of insurance to depositors and to ensure an orderly disposition of assets, the Bank Board needed the authority to make FSLIC a federal receiver for state-chartered associations in certain circumstances. *See* 114 *Cong.Rec.* 18298 (1968). Congress was concerned with a limited type of problem that had arisen in the case of Marshall Savings & Loan Association where the association was placed in custody but not for the purpose of liquidation. Although the state authorities had the authority, they did not appoint FSLIC as a state receiver. As such, under then existing law, FSLIC was powerless to provide insurance for saving account holders for several months despite the fact that the institution was closed and it had suspended all withdrawals. It was only several months later when a receiver for the purpose of liquidation was appointed, that FSLIC payments were triggered. *See* 114 *Cong.Rec.* 18299.

The *Marshall* case posed several real problems for the federal regulators. First, the lengthy passage of time undermined public confidence in the safety and stability of state associations. Second, FSLIC was unable to monitor the state institution and preserve at the earliest possible stage the greatest percentage of assets. Finally, the account holders themselves were greatly prejudiced. 114 *Cong.Rec.* 17725.

In light of the possibility of state institutions avoiding FSLIC intervention even

---

4. To the extent the Commissioner desires judicial review before the expiration of the ten day period of acts not expressly authorized by this part, he or she may seek such confirmation pursuant to Cal.Fin.Code § 9012(a).

when they had been closed for substantial periods of time and when the institution was actually denying withdrawals, Congress enacted the 1968 legislation. In doing so, however, Congress recognized *two* competing interests: 1) FSLIC protecting its own funds and taking over as early as reasonable; and 2) Protecting the right of the states to regulate savings and loan associations without federal intervention until the most severe or urgent situation occurs such as near certain collapse. 114 *Cong.Rec.* 17726.

As originally introduced, S.3436 would have authorized the Bank Board to appoint FSLIC as federal receiver for an insured state association if (1) a conservator, receiver or other legal custodian has been appointed or the association has been closed under state law; and (2) the appointment is "advisable in the public interest." *Id.* The committee criticized the bill as to broad and affording state associations few legal challenges against the appointment of a federal receiver. *Id.*

In order to meet the objections, Congress established three *very objective standards* that must each be met before the federal regulators could take over a state institution. Congress expressly limited federal intervention to those urgent situations, as presented by the *Marshall* case, where the federal regulators had no independent means of protection and were forced to stand by and helplessly watch a state association close its own doors or be closed by an *independent* act of the state government.

In the present case, the federal regulators have placed the cart before the horse. Instead of waiting for the state to close the state association, the FHLBB played an active role in the artificial creation of a closing under state law. Moreover, the Board failed to wait the required fifteen days to appoint FSLIC as a federal receiver notwithstanding that the State already had appointed FSLIC as a receiver under state law.

When Congress required a closure, it envisioned a situation where the association actually closed its doors to the public. Congress certainly did not envision a CIA-like operation where the FHLBB orchestrates a neat five-minute "closure" to affect a paper satisfaction of the statutory requirements with the state acting as an unwilling co-conspirator. Comity and due process require more.

## C. *Failure to Make a Withdrawal*

■ In addition to requiring that the association be closed under state law, section 1729(c)(2) requires that "one or more of the holders of withdrawable accounts . . . is unable to obtain a withdrawal of his account in whole or in part." The defendants concede that they cannot identify any person who was unable to withdraw funds from a withdrawable account. However, they argue that once an association is closed under state law, depositors *ipso facto* cannot withdraw their funds. Such a statutory construction, while expedient to the facts of this case, would in essence write out the requirement from the statute. This court cannot abide such an interpretation.

It is well-established that "a statute should not be construed in such a way as to render certain provisions superfluous or insignificant." *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970–71 (5th Cir. 1981); *General Motors Acceptance Corporation v. Whisnant*, 387 F.2d 774, 777–78 (5th Cir. 1968). This rule applies with special force to the present situation where the allegedly cumulative term was added by Congress by amendment to a bill that already contained the first requirement. 114 *Cong.Rec.* 17726.

In the present case, one need not conclude that this third requirement has no independent significance or, as defendants would hypothesize, only comes into play when the state custody lasts for a lengthy period of time. On the contrary, the requirement that a holder of a withdrawable account be denied a withdrawal is meant to narrow further the occasions when federal intervention in state takeovers will be permitted. It is at least possible that an association could be closed under state law and

yet generate no run on the accounts. For whatever reason this might occur, the absence of *any* depositors being denied a requested withdrawal would be a situation where federal restraint would be in order.

In their final brief filed on these questions, the defendants attempt one final time to escape the straight-forward closure and nonwithdrawable accounts requirements. In short, the defendants argue that section 1729(c)(2)(A) and (C) do not apply where FSLIC has already been appointed state receiver. The short and simple answer to the defendants' inventive argument is that it fails to come to grips with the clear and unambiguous language of the statute. If the exercise of FSLIC authority as a state receiver under section 1729(c)(1) is sufficient to transform FSLIC immediately into a federal receiver then section 1729(c)(2) becomes mere surplusage and without meaning in a vast number of receivership cases. Such statutory construction is fundamentally unsound. *See, e.g., United States v. Wilson*, 591 F.2d 546, 547 (9th Cir. 1979).

## CONCLUSION

It is, of course, well-established at this point in our decisional law that the drastic public and private consequences of a failing financial institution permits prompt and decisive *ex parte* regulatory action. *See, e.g., Fahey v. Mallonee*, 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1555–56, 91 L.Ed. 2030 (1947). However, due to the serious consequences of such action, this regulatory authority must be exercised with great caution and restraint.

The court has no doubt that the defendants here were, as they saw it, acting in the best interests of the taxpayers, the depositors and the Industry. In effect, however, they were precipitous in their exercise of authority and failed to await the occurrence of the statutory preconditions in their natural time.

"The aim of the [1968] legislation is to enable the FSLIC to effect an orderly disposition of the assets of insured associations whose depositors have been reimbursed by FSLIC insurance payments." S.Rep.No. 1263, 90th Cong., 2d Sess. (1968), U.S.Code Cong. & Admin.News 1968, p. 2530. In this case, FSLIC had paid no funds to any Fidelity depositor. If the natural reaction to the relevant statutes is that FSLIC response will always be "too little, too late," the most appropriate focus of such comment is the Congress. As it presently reads, section 1729(c)(2) presents three clear and unambiguous prerequisites to federal intervention in this area.

Accordingly,

IT IS HEREBY ORDERED that the Federal Home Loan Bank Board shall remove the federal receiver forthwith.

The court will entertain further arguments and briefing as to the specifics of such additional relief as may be available to the parties hereto.

IT IS SO ORDERED.

## ON REMEDIES

■ This action is presently before the court on the question of remedies available to a state savings and loan association whose assets were wrongfully seized by the Federal Home Loan Bank Board (FHLBB). This court has previously determined that the FHLBB's appointment of the Federal Savings and Loan Insurance Corporation (FSLIC) as federal receiver for the plaintiff Fidelity Savings and Loan Association (Fidelity) did not comply with the requirements enumerated in 12 U.S.C. § 1729(c)(2). The question now presented is the scope and effect of that order and any additional relief to which the plaintiff may be entitled.

The court has carefully considered the briefs and arguments of counsel and the applicable statutes and concludes that the appointment of the federal receiver extinguished any preexisting state receiverships. Additionally, the court concludes that the mandates of the due process clause contained in the Fifth Amendment to the United States Constitution require that all assets presently held by the federal receiver be returned to Fidelity and that all actions taken under such receivership are voidable at the instance of the plaintiff as the ag-

grieved party. However, the court further concludes that it has neither the power nor the inclination to order the FHLBB or FSLIC to take any actions or make any guarantees to Fidelity if it were to choose to reacquire the association's assets.

DISCUSSION

■ The defendants argue that the removal of the federal receiver by this court would result only in the return to the state receiver of any remaining assets and liabilities in the possession of the federal receiver. This court disagrees. When the FHLBB imposed a federal receivership, that action necessarily extinguished any preexisting state receiver and vested exclusive jurisdiction over such receiver with this court. 12 U.S.C. § 1464(d)(6)(A), (C); 12 U.S.C. § 1729(c)(2). In fact, the defendants previously took the correct position that federal law clearly was intended to permit the FHLBB to remove receiverships of state-chartered associations from the jurisdiction of the state courts and put them under the jurisdiction of the federal courts. (Defendants' Memorandum in Support of Summary Judgment, at p. 19.) As such, the state court receiver no longer existed as a matter of law and any remedies previously available to the association under state law could not be pursued.

Therefore, the question before this court is the scope of the remedy to be afforded the plaintiff for the wrongful seizure of its association. Section 1464(d)(6)(A) empowers this court to conduct a hearing *on the merits* and to order the FHLBB to remove the receiver for the state association. Section 1464(d)(6)(C) further provides that no court, other than the federal court hearing the action on the merits, may restrain or affect the exercise of powers or functions of the federal receiver, except at the instance of the FHLBB.

The defendants argue that the only power this court reserves in such a hearing is to remove the receiver, notwithstanding that the receiver may have already transferred some or all of the assets to a newly created association pursuant to section 1729(b)(4). This argument, if accepted, would render the plaintiff's statutory right to judicial review of the takeover meaningless. Clearly, fundamental concepts of due process and fairness require that the association has the right, if it chooses to exercise it, to render void the actions taken by the wrongfully appointed receiver and to reacquire its assets.

■ As a general rule, due process requires notice and an opportunity to be heard prior to a governmental deprivation of property. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). However, it is well-recognized now in the area of regulatory takeovers of failing institutions, *ex parte* governmental takings are permitted as long as the aggrieved association retains the ultimate right to a judicial review of the agency's action. Fundamental due process and fairness require that a meaningful hearing must be had *before* one is finally deprived of his property. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974).

If this court were to accept the defendants' interpretation of the powers of this court under a section 1464(d)(6)(A) hearing, the federal regulators would be permitted to take over a state association in violation of statute yet successfully prevent reacquisition by immediately transferring the assets to a new association. While the need for swift and decisive action is great in the area of failing financial institutions, shielding federal regulators from a meaningful judicial review of their actions clearly violates the precepts of fundamental fairness required by the fifth amendment. It was for this reason that Congress required for the most expedited of procedures to allow aggrieved state associations to challenge federal intervention.

■ Notwithstanding these principles, however, the court recognizes the need for federal regulators to take immediate actions to attempt to conserve the assets of a failing institution. *See Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). Moreover, the court is also mindful that many of these steps may need to be

taken before there is time for the expedited judicial review. Thus, in order to guarantee that those steps can be taken without the cloud of future litigation foreclosing many necessary actions, the court concludes that the actions taken by the federal receiver before a judicial determination are entitled to a facial determination of validity. As such, these actions are not void as a matter of law, but rather voidable and binding until they are voided by the party entitled to do so. *Cf. United States v. Peco International, S.A.*, 243 F.Supp. 250, 253 (D.Can.Zone 1965); 92 C.J.S., Void, pp. 1024–25.

This interpretation preserves both the integrity of interim federal actions and the due process rights of the aggrieved association. Specifically, it means that the aggrieved association can choose to render the federal receiver's actions void and have its assets returned or it can, if it deems it in its best interests, choose to ratify such actions and accept the removal of the receiver and the return of any assets held by that receiver as just compensation for the property seized by the government in violation of its due process rights.

In the present case, the plaintiff has indicated to the court through the argument of its counsel that it would not choose to have its association returned to it unless this court could require the defendants to make certain loans and guarantees made available to its successor, Fidelity Federal. However, after careful consideration of the jurisdictional limitations contained in the statute and the extraordinary nature of plaintiff's request, this court rules that such an order cannot be entered. While this court has the authority to order the FHLBB to remove the receiver and to return any assets that were wrongfully taken or subsequently transferred, it cannot sit in the position of a federal regulatory agency and determine whether future loans or other regulatory decisions should be made.

Therefore, in light of the statements made by plaintiff's counsel at oral argument, the court concludes that the federal receiver must be removed and the assets held by it (the claim against the Home Loan Bank of San Francisco and any net worth at the time of the takeover) returned to Fidelity.

IT IS SO ORDERED.