FIRST NATIONAL BANK & TRUST, WI-BAUX, MONTANA; Thomas E. Towe, Trust; Kristin Hartley, Trust; Sara Horsfall, Trust; Andrew C. Towe, Trust; Grant Investments Fund; Irene Koch; Dorothy Tow, Stockholders of First National Bank of Wibaux, Montana, Plaintiffs–Appellants,

v.

DEPARTMENT OF the TREASURY, The COMPTROLLER OF THE CURRENCY, Defendant–Appellee.

No. 94–35283.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1995.

Decided Aug. 21, 1995.

Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfield, Billings, MT, for plaintiffs-appellants.

Jacob M. Lewis, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: WRIGHT, SKOPIL and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Acting Comptroller of the Currency Stephen L. Steinbrink (the Comptroller) appointed a conservator for First National Bank & Trust (the Bank) pursuant to 12 U.S.C. § 203(a) (Supp. II 1990). The Bank and certain of its shareholders sued the Comptroller to terminate the conservatorship, contending he had violated their rights to procedural due process and had acted arbitrarily and capriciously. On cross-motions for summary judgment, the district court granted judgment for the Comptroller, from which the Bank appeals. We affirm.

## FACTS

On January 15, 1987, Edward Towe became president and chief executive officer of First National Bank and Trust, located in eastern Montana.[1] At that time, the Bank was operating under a November 14, 1986 cease and desist order imposed by the Comptroller.

Between 1987 and 1990, the Comptroller issued increasingly critical examination reports of the Bank, pointing out the Bank's noncompliance with certain laws and regulations and with the terms of the cease and desist order.

In a May 5, 1992 letter to the Bank's board of directors, the Comptroller described the Bank's "history of complying with banking laws and regulations, compliance with the Cease and Desist Order and operations of the bank" as "unacceptable," and informed the board that the most recent examination revealed that the Bank's condition "remains a serious supervisory concern." The letter stated that "[d]ue to the seriousness of the matters discussed" in the letter and the accompanying examination report, the board should respond "no later than May 26, 1992."

The board's response consisted of a six-page letter dated May 15, 1992 from Edward Towe as the Bank's president, a four-page letter dated June 1, 1992 from Thomas Towe, as the Bank's attorney and chairman of the board, and a 33-page "Board Response," which was enclosed with Thomas Towe's letter. On June 25, 1992, the Comptroller appointed a conservator for the Bank pursuant to 12 U.S.C. § 203(a) (Supp. II 1990).[2]

In his 124-page decision appointing a conservator, the Comptroller criticized the Bank for granting favorable treatment to its affiliated entity, Grant Investments. Also singled out for criticism was the Bank's alleged disregard of regulations governing "other real estate owned" (OREO). The Comptroller found the Bank had exceeded the five-year holding deadline for certain foreclosed properties, and that by refusing to account for those properties in accordance with banking regulations, the Bank had effectively overstated its capital. The Comptroller also found the Bank had violated at least eight of the seventeen articles of the cease and desist order.[3]

On July 6, 1992, the Bank and certain of its shareholders sued the Comptroller in district court to terminate the conservatorship pursuant to 12 U.S.C. § 203(b)(1). The Bank also requested a post-seizure evidentiary hearing, which the district court denied. The

---

1. The Towe family's control of the Bank was not limited to Edward Towe's top management position. At the time the conservator was appointed, the entire acting board of directors consisted of Towe family members, and the Towe family controlled more than 98% of the Bank's stock.

2. In 1991, 12 U.S.C. §§ 203(a)(5) and (a)(7) were recodified at 12 U.S.C. §§ 1821(c)(5)(H) and (c)(5)(D) (1994), respectively. See Federal Deposit Insurance Corporation Improvement Act of 1991 (FDICIA), Pub.L. No. 102–242, § 133(c),

105 Stat. 2271. Because these amended provisions did not become effective until December 19, 1992, and the Comptroller took over the Bank on June 25, 1992, they do not apply to this case.

3. Other grounds for the decision included the Bank's retention of Edward Towe's wife as a "consultant," sham transactions between the Bank and Edward Towe's associates, and the Bank's irregular compensation of Edward Towe.

Comptroller then moved for a protective order limiting review of his decision to the administrative record, which the district court granted over the Bank's opposition.

The parties filed cross-motions for summary judgment. The district court granted summary judgment to the Comptroller. The Bank moved for reconsideration, which the district court denied. This appeal followed.

## DISCUSSION

A. Did the lack of predeprivation notice and a hearing violate due process?

The Comptroller is authorized to appoint a conservator for a national bank "without notice or prior hearing" whenever he finds "a violation or violation of laws, rules, or regulations, or any unsafe or unsound practice ... likely to cause insolvency or substantial dissipation of assets or earnings, or ... likely to weaken the bank's condition or otherwise seriously prejudice the interests of its depositors." 12 U.S.C. § 203(a)(5) (Supp. II 1990).

The Bank contends that unless section 203(a) is limited to "extraordinary" circumstances, the Comptroller's appointment of a conservator without notice and a prior hearing is unconstitutional. *See United States v. James Daniel Good Real Property,* 510 U.S. ——, ——, 114 S.Ct. 492, 501, 126 L.Ed.2d 490 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.") (quoting *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972)). Because the Bank was not afforded notice and a hearing prior to the Comptroller's appointment of the conservator, the Bank argues section 203(a) was unconstitutionally applied to it.

■ A predeprivation hearing may be postponed "where some valid governmental interest is at stake." *Good,* 510 U.S. at ——, 114 S.Ct. at 501 (quoting *Fuentes,* 407 U.S. at 82, 92 S.Ct. at 1995). Whether a situation warrants such a postponement depends on balancing three factors: (1) the importance of the private interest affected by the governmental action, (2) the government's interests, and (3) the risk of erroneous deprivation. *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

■ It is well-recognized that the government's interest in protecting bank depositors and the public weal justifies the appointment of a conservator without a prior hearing. *See Fahey v. Mallonee,* 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1555–56, 91 L.Ed. 2030 (1947); *Fidelity Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.,* 689 F.2d 803, 811 (9th Cir. 1982); *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). The Bank nonetheless dismisses the government's interest here as weak, because the Bank "was not on the verge of collapse." Yet the Bank was obviously troubled; its CAMEL rating, though recently upgraded, was but one grade above the worst.[4] Moreover, less drastic enforcement measures, including the cease and desist order, had been unavailing. Against this background, the government had a strong interest in moving quickly to avoid dissipation of the Bank's assets.

Nor is the private interest in this case as strong as the Bank suggests. The Bank's shareholders had full knowledge "of the extensive regulatory system and the possibility of continuous, in-depth supervision by Bank Board examiners;" the Bank was operating under a cease and desist order and had a poor record of compliance with banking laws and regulations. *See Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1411 (5th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988). Finally, as we discuss *infra,* the availability and nature of postdeprivation review by the district

---

4. CAMEL is a uniform rating system which reflects the condition of a financial institution. Shortly before the conservatorship, the Bank's CAMEL rating was upgraded from 5 to 4. A CAMEL rating of 4 applies to banks with "an immoderate volume of serious financial weaknesses or a combination of other conditions that are unsatisfactory," and that may have "[m]ajor and serious problems or unsafe and unsound conditions ... which are not being satisfactorily addressed or resolved." 5 Fed. Banking Law Rep. (CCH) ¶ 59,205B, at 37,107–5 (Oct. 28, 1994).

court minimized the risk of an erroneous deprivation.

Having weighed the relevant factors, we conclude the Bank's constitutional rights were not violated by the Comptroller's appointment of a conservator without notice and a predeprivation hearing. We next consider the adequacy of the district court's postdeprivation review.

B. Was the scope of the district court's postdeprivation review consistent with section 203 and the Administrative Procedures Act? [5]

■ Generally, judicial review of an agency decision is limited to the administrative record. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). However, the Bank contends section 203 required the district court in this case to depart from this general rule, expand the scope of its review beyond the administrative record, and hold an evidentiary hearing.

■ Judicial review of the Comptroller's decision to appoint a conservator is afforded by section 203(b)(1). This section permits a bank to file suit in federal district court to terminate the conservatorship, and authorizes "the court, upon the merits [to] dismiss such action or [to] direct the Comptroller to terminate" the conservatorship if it should "find[ ] that such decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 12 U.S.C. § 203(b)(1).

Arguing for an expanded scope of review, the Bank relies on several district court cases which have read the phrase "upon the mer-

its" in section 203(b)(1) and in 12 U.S.C. § 1464(d)(6)(A) (1988) (current version at 12 U.S.C. § 1464(d)(2)(B) (1994)), an identically-worded statute applicable to thrifts, as requiring such a hearing. *See Collie v. Federal Home Loan Bank Bd.,* 642 F.Supp. 1147, 1149–52 (N.D.Ill.1986); *Telegraph Savings and Loan Assoc. v. FSLIC,* 564 F.Supp. 862, 868–70 (N.D.Ill.1981); [6] *see also Haralson v. Federal Home Loan Bank Bd.,* 655 F.Supp. 1550, 1559–60 (D.D.C.1987) (12 U.S.C. § 1464(d)(6)(A) requires postdeprivation hearing in which board carries evidentiary burden), *appeal dismissed,* 837 F.2d 1123 (D.C.Cir.1988); *Fidelity Savings and Loan Assoc. v. Federal Home Loan Bank Bd.,* 540 F.Supp. 1374, 1377 (N.D.Cal.1982) ("If it means nothing more, the term 'on the merits' reveals that a proceeding under this statute is more in the nature of a *de novo* review than an appellate review."), *rev'd on other grounds,* 689 F.2d 803 (9th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).

The Fifth, Eighth and Tenth Circuits have rejected these district court cases, and have held that the phrase "upon the merits" does not require departing from the traditional scope of review.[7] *Franklin Savings Ass'n v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1140 (10th Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992); *Woods,* 826 F.2d at 1409; *Guaranty Sav. & Loan v. Federal Home Loan Bank Bd.,* 794 F.2d 1339, 1342 (8th Cir.1986). These circuits have construed the phrase "upon the merits" as requiring neither "a full adversarial and evidentiary hearing, nor ... de novo review of appointment decisions." *Franklin,* 934 F.2d at 1138. As the *Franklin* court explained, "[r]eview 'upon the mer-

5. "The scope of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision." *Franklin Savings Ass'n v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1136 (10th Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). By contrast, "[t]he standard of judicial review refers to how the reviewing court will examine that evidence." *Id.*

6. These courts did not reach a consensus, however, on the exact scope of review to be afforded. *Compare, e.g., Telegraph Savings,* 564 F.Supp. at 869–70 (requiring full trial "on the merits") *with Collie,* 642 F.Supp. at 1149–52 (rejecting limiting

its review to the administrative record, but holding nonetheless that if the thrift had a "meaningful opportunity to be heard" and a reasonable basis existed for the takeover, no trial was required).

7. The Sixth Circuit, in a recent unpublished decision, followed its sister circuits in holding that the scope of review under 12 U.S.C. § 1464(d)(2)(C)(iii) is confined to the administrative record. *See Marietta Franklin Securities Co. v. Muldoon,* 1994 WL 399550, * 2 (6th Cir. Aug. 1, 1994) (per curiam).

its' simply means the district court's decision to either dismiss the action or remove the conservator should be based upon the merits of the action (*i.e.,* whether statutory grounds for the appointment of a conservator exist), rather than on procedural or policy oriented grounds." *Id.* (citing *Guaranty Sav. & Loan,* 794 F.2d at 1342).

■ We agree with these circuit court decisions. Section 203(b)(1) does not require a district court to expand the scope of review beyond the administrative record. The Bank argues, however, that an expanded scope of review was required in this case because when the Comptroller appointed the conservator he acted in bad faith. The Bank contends the Comptroller compiled a one-sided record by considering only agency documents and by secretly excluding relevant evidence favoring the Bank. We reject this argument.

The record reveals that the Comptroller considered the "substance" of the Bank's position before appointing a conservator. *See Franklin,* 934 F.2d at 1139–40 (rejecting argument that agency record was "one-sided and fail[ed] to contain any of [the thrift's own] documents," because the "substance of [the thrift's] positions were [sic] before the [agency] when the appointment decision was made"); *see also Woods,* 826 F.2d at 1412–13 (rejecting thrift's claims that, *inter alia,* agency's investigation was "wholly inadequate," and the record was "unilaterally and secretly compiled" because thrift had opportunity to rebut agency's criticism during its examinations and in connection with cease and desist proceedings).

The Bank had ample opportunity to express its views when it received adverse examinations between 1986 and 1992, and when it responded to the Comptroller's May 5, 1992 letter and accompanying examination findings. The agency record "contains numerous recitations of [the Bank's] views and reasons therefor." *Franklin,* 934 F.2d at 1139; *see also Woods,* 826 F.2d at 1412–13.

Moreover, the Bank has failed to identify any extraordinary circumstances sufficient to override the discretion accorded the Comptroller's compilation of the administrative record. What the Tenth Circuit said in *Franklin* applies to this case:

Absent extraordinary circumstances, the decision of the [Comptroller] as to what information he must review to make an appointment decision should be left to his discretion. The [Comptroller], in the case of judicial review of his appointment decision, has the obligation to produce and certify the record upon which he relied at the time of the decision. This record must contain sufficient data to allow the reviewing court to determine whether the [Comptroller] had a rational basis for the appointment decision.

*Franklin,* 934 F.2d at 1139. Here, the Comptroller had a rational basis for his decision. The evidence the Bank cites as "missing" from the administrative record would not have changed that decision.

We also reject the Bank's argument that under the Administrative Procedures Act (APA), the district court should have allowed the Bank to supplement the administrative record. None of the APA-recognized exceptions to the general rule limiting judicial review to the administrative record apply in this case. *See Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436–37 (9th Cir.1988), *as amended,* 867 F.2d 1244 (9th Cir.1989).

In sum, neither section 203, the Bank's claim of bad faith, nor the APA, required the district court to review the Comptroller's decision on the basis of anything other than the administrative record. We turn now to the Bank's argument that the district court's postdeprivation review of the administrative record violated due process.

**C. Did the district court's postdeprivation review violate due process?**

■ The Bank grounds its due process challenge on its assertion that the postdeprivation review was constitutionally inadequate because, by refusing to consider evidence outside of the administrative record, the district court failed to "assure against the risk of a mistaken deprivation." We reject the Bank's due process challenge.

At every turn the Bank had the opportunity to respond to the Comptroller's concerns. The Bank received the Comptroller's unfa-

vorable examination reports, it had discussions with Comptroller personnel, and prior to the conservator's appointment, it was given the opportunity to respond to the Comptroller's findings. *See Woods,* 826 F.2d at 1411–13; *see also Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 16 n. 17, 98 S.Ct. 1554, 1564 n. 17, 56 L.Ed.2d 30 (1978) ("The opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances."). The Bank "understood the issue" and had "full opportunity to justify [its] conduct." *Southwest Sunsites, Inc. v. F.T.C.,* 785 F.2d 1431, 1435 (9th Cir.) (internal quotation omitted), *cert. denied,* 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986). The Bank's responses were made part of the administrative record, and were considered by the Comptroller before he appointed the conservator.

The Bank's due process rights were further safeguarded at the district court hearing. There the Bank had ample opportunity to argue its position and to rebut the Comptroller's conclusions before an impartial tribunal. That no new evidence was introduced is inconsequential. *Cf. Clouser v. Espy,* 42 F.3d 1522, 1540–41 (9th Cir.1994) (holding that evidentiary hearings are not required by due process when administrative agency includes written submissions in administrative record and provides for appellate administrative review), *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995). The Bank's due process rights were not violated.

**D. Did the Comptroller act arbitrarily and capriciously by placing the Bank in conservatorship?**

■ The willful or continuing violation of a cease and desist order independently warrants appointment of a conservator, regardless of whether such violations place a bank at financial risk. 12 U.S.C. § 203(a)(7). Focusing on the Comptroller's findings, the Bank argues the Comptroller erred in finding that it violated numerous provisions of the cease and desist order. As a result of these erroneous findings, the Bank contends the Comptroller acted arbitrarily and capriciously when it placed the Bank in conservatorship.

Under our "narrow" standard of review, *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861–62, 104 L.Ed.2d 377 (1989), we may not "substitute [our] judgment for that of the agency," *Motor Vehicle Manuf. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983), but instead must determine whether the agency "has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983).

The Bank admits violating various policies which it had adopted pursuant to the cease and desist order, yet insists it did not violate the cease and desist order. The Bank contends the order required only "adoption," not actual implementation, of the policies. Therefore, the Bank reasons, its failure to abide by those policies amounted to just that, a violation of the policies, *not* the terms of the cease and desist order.

This argument is without merit. As the Comptroller puts it, "the Bank's reading would render the cease and desist order meaningless; there is no point in having the Bank adopt a comprehensive revision of its policies and practices if the Bank is not obliged to abide by" them.

The Bank's violations of the cease and desist order alone justified the appointment of a conservator. The Comptroller's appointment of a conservator was not arbitrary or capricious.[8]

## CONCLUSION

The Comptroller's ex parte appointment of a conservator without notice and a predepri-

---

8. Because the Bank violated the cease and desist order, we need not determine whether the conservatorship was also justified by the Bank violating banking laws and regulations. *See Franklin,* 934 F.2d at 1142 (observing that appointment of conservator withstands judicial review when one of the statutory grounds existed at the time of the appointment).

**900**

vation hearing did not violate due process. Limiting judicial review to the administrative record did not violate due process, 12 U.S.C. § 203, or the APA. The Bank's violations of the Comptroller's cease and desist order warranted the appointment of a conservator. That appointment was not arbitrary or capricious.

AFFIRMED.