[L. A. No. 14173.   In Bank.—April 14, 1936.]

NORTH AMERICAN BUILDING AND LOAN ASSOCIATION, Appellant, v. FRIEND W. RICHARDSON, as Building and Loan Commissioner, etc., et al., Respondents.

David R. Faries, Joseph Scott and Don F. Tyler for Appellant.

Roscoe C. Andrews, Roland Tognazzini and Thomas M. Gannon for Respondents.

THE COURT.—On July 8, 1932, Friend W. Richardson, as Building and Loan Commissioner of the State of California, took over the assets of the North American Building-Loan Association, pursuant to the provisions of section 13.11 of the Building and Loan Act, enacted in 1931. (Stats. 1931, pp. 483, 539.) Section 13.11 reads as follows: "Power to take possession of association. If the commissioner as the result of any examination or from a report made to him or to any association doing business in this state or its investors or any thereof, shall find that such association is violating the provisions of its articles of incorporation or charter or by-laws or any law of this state, or is conducting its business in an unsafe or injurious manner, he may by an order addressed to such association direct a discontinuance of such violations or unsafe or injurious practices and a conformity with all the requirements of law; and if such association shall not comply with such order within the time specified therein, or if it shall appear to the commissioner that any association is in an unsafe condition or is conducting its business in an unsafe or injurious manner such as to render its further proceedings hazardous to the public or to any or all of its investors, *or if he shall find*

*that its assets are impaired to such extent that, after deducting all liabilities other than to its investors they do not equal or exceed the sum of the value of its outstanding shares and investment certificates and the par value of its outstanding stock,* or if any association shall refuse to submit its books, papers and accounts to the inspection of the commissioner or any of its examiners, deputies, or assistants, or if any officer thereof shall refuse to be examined upon oath concerning the affairs of such association, then the commissioner *may forthwith demand and take possession of the property, business and assets of such association* and retain such possession until such association shall with the consent of the commissioner resume business, or until its affairs be liquidated. Such association may, with the consent of the commissioner, resume business upon such conditions as may be approved by him.''

Thereafter within thirty days the North American Building-Loan Association commenced this statutory action in the superior court pursuant to section 13.12 of the aforesaid Building and Loan Act to enjoin the Building and Loan Commissioner from further proceedings and to secure an order directing him to surrender to said association the business, property and assets taken over by him. Section 13.12 reads as follows: ''Court application by association aggrieved. Whenever any association of whose property, business and assets the commissioner has taken possession, as aforesaid, deems itself aggrieved thereby, it may at any time within thirty days after such taking possession apply to the superior court of the county in which the principal office of such association is located, to enjoin further proceedings; and said court, after citing the commissioner to show cause why further proceedings should not be enjoined, and hearing the allegations and proofs of the parties and determining the facts, may upon the merits dismiss such application or enjoin the commissioner from further proceedings and direct him to surrender such business, property and assets to such association . . . ''

The complaint of plaintiff association alleged that the plaintiff ''deems itself aggrieved by the action of the defendants in taking and retaining possession of its property, business and assets as aforesaid.'' Plaintiff by such allegation attempts to present two main issues: (1) that under the facts

of the instant case the commissioner was not justified in taking over the business, property and assets of such association, and (2) even if the commissioner was justified in taking over the business, he was not justified in retaining said assets and proceeding to liquidate the affairs of the association. At the trial of the case, the commissioner, in justification of his taking over the business, property and assets of the association, elected to rely upon the impairment of the assets of the association. In substantiation of such issue, the commissioner offered in evidence the report of the firm of Fuller, Eadie & Company, a firm of certified public accountants, who had audited the books and accounts of the association for the express purpose of determining whether or not such impairment existed. Mr. Eadie, the member of the firm in charge of the audit, reported that in April, 1932, there existed an impairment of $246,352.30. This impairment did not include the depreciation in real estate values owned by the association, which depreciation was not taken into account in said report. There was further evidence consisting of the testimony of Milton C. Shaw, chief examiner of the Building and Loan Commission, who had been in office under the preceding commissioner, that an analysis of the reports of the association ending September 30, 1931, and December 31, 1931, prepared by the association itself and verified by its officers, showed a capital impairment as far back as these respective dates. At the trial there was also introduced evidence on behalf of the association that a plan for the reorganization of the association had been prepared and presented to the commissioner but that he had refused to give his approval to such plan, and had insisted on retaining possession of the business, property and assets of the association and liquidating the affairs of the association. Upon the hearing of such allegation and proof, the trial court refused to make an order enjoining the commissioner from further proceedings, or directing him to surrender such business, property and assets to the association, and dismissed the application of the plaintiff association. Thereafter the plaintiff association perfected its appeal to this court. The notice of appeal specified that said appeal was taken from (1) the judgment, (2) the order denying plaintiff's motion for a new trial, (3) from the orders of the superior court refusing to fix a bond on appeal and refusing

to deliver the assets of the North American Building-Loan Association to its duly constituted officers and directors pending final decision on appeal, and (4) from the order refusing to determine the amount of attorney's fees due Joseph Scott and refusing to make the same a charge against the funds of the plaintiff in the hands of the defendant commissioner.

■ In view of the clear and unambiguous language of section 13.11 of the Building and Loan Act, there can be no doubt that the Building and Loan Commissioner was justified in taking over the property, business and assets of the appellant association on July 8, 1932. The record before us not only justifies such conclusion, it practically compels it. The report of the firm of certified public accountants that their report showed an impairment of $246,352.30 furnished ample warrant for such action on the part of the commissioner. Appellant association, while complaining that it was not permitted to have the audit made by the firm of accountants which had previously done its auditing, nevertheless selected the independent firm of Fuller, Eadie & Co., which made the audit after receiving bids on the job, and without any suggestion from the commissioner as to what firm should be employed. This report showing on its face a capital impairment of $246,352.30, standing alone, was ample justification for the action of the commissioner. ■ Appellant endeavors to destroy the effect of this report by an analysis of the various items of the report in an attempt to prove that if certain items had been considered as assets and certain other items had not been classified as liabilities, the capital impairment would not have been so large. For instance, appellant association insists that uncollected interest not three months delinquent on loans made by the association should have been included as an asset of the association. As the auditing firm pointed out that as a matter of fact there was little or no chance of collecting this interest, it cannot be said, we think, that good accounting practice required that such interest be listed as an asset. ■ Appellant also complains that "entrance fee liabilities" were included as liabilities. These entrance fee liabilities were entrance fees paid by investors which were to be returned to them when the last payment had been made on their investment contracts. This fee could be retained by the association only in the event the investor prematurely termi-

nated his contract. The report included as a liability the amount of these fees which would be returnable to those investors in good standing at the date of the report. We find no cause of complaint in this procedure. ▮ Appellant also complains that there was written off from the assets of the company 60 per cent of the value of the furniture of the branch offices which had been closed although no inspection had been made of the furniture. As we understand it, this is the regular practice in making such an audit inasmuch as such depreciation is deemed to result from the fact that the furniture is no longer in use by a going concern and regardless of the physical condition of the furniture. ▮ Finally appellant complains that the report included as liabilities the taxes due and delinquent on real property held by subsidiary companies. In the report the auditor explained that it was necessary to pierce the corporate entity and treat the real property held by the subsidiary companies as property actually owned by the association in order to arrive at a true picture of the financial condition of the association. The trial court was undoubtedly of the opinion that the report of the auditing firm was a fair and just report, and we agree with its conclusion. It follows, therefore, that the finding of the trial court to the effect that an impairment existed at the time of the taking over of the business, property and assets of the association by the commissioner is supported by substantial evidence.

The attack upon the correctness of the auditing report to reflect the true financial condition of the association is, however, more or less a minor contention. ▮ Appellant's main contention is that even though the report correctly disclosed an impairment, the impairment so disclosed was at most a "mere technical impairment" and the commissioner's action was not justified. Appellant claims that inasmuch as the statute gives to the superior court the power upon the hearing of the allegations and proofs of the parties and determining the facts "upon its merits" to enjoin the commissioner from further proceedings and direct him to surrender such business, property and assets to such association, the court has the authority and power as a court of equity to determine whether or not the financial condition of the association was sufficiently sound to warrant a disaffirmance of the action of the commissioner.

In this regard, appellant association insists that as the assets of the association were sufficient to meet its outstanding obligations, take care of the full face value of all investment certificates, and still have a substantial surplus for the stockholders, there was only a "technical impairment", and the seizure of its assets by the commissioner was not justified. In other words, it is the appellant association's contention that the stockholders of any corporation expect to share in the losses and profits, and that if the impairment does not endanger the rights of the depositors of the association, but only amounts to a deficit in the assets available for the stockholders, these stockholders should, if they desire, be permitted to continue the business of the association and not be forced to suffer a liquidation by the commissioner. The answer to this contention is the plain requirement of the Building and Loan Act hereinbefore quoted which declares that if an impairment exists to such an extent, after deducting all liabilities other than to investors, that the remaining assets do not equal or exceed the sum of the value of its outstanding shares and investment certificates *and* the par value of its outstanding stock, the commissioner may forthwith take over the business, property and assets of the association. This language is so plain and clear that any attempt to interpret it would be almost an absurdity. It is apparent that the legislature intended by this provision that if any impairment whatever existed, the commissioner might in his discretion take over the business, property and assets of the association showing such impairment. We can see no escape, therefore, from the conclusion that if an actual impairment existed as defined by the statute, the commissioner was entitled to take over the business, property and assets of the association. This being so, it was the duty of the court, upon proof of the existence of the impairment at the date of the taking over by the commissioner, to uphold the action of the commissioner. The statute plainly sets out the conditions upon which the commissioner was entitled to take over the assets, and we do not believe that the power and authority of the superior court was so enlarged by the use of the words in the statute, "upon its merits", that it could determine that the action of the commissioner was not justified when the evidence before it showed the existence of said conditions. It follows

that the finding of the trial court that the action of the commissioner was justified was amply supported by the evidence, and the judgment based thereon must be sustained.

Another objection to the action of the commissioner is predicated upon a previous order of the commissioner of January 22, 1932. The record shows that in January, 1932, when the said commissioner took over the office of Building and Loan Commissioner, his chief examiner made a report to him, based upon an analysis of the verified quarterly reports furnished by the appellant association to the Building and Loan Commissioner, that there existed a total impairment of $318,057, and the examiner discussed with the commissioner the advisability of requesting the directors of the association to levy an assessment of at least $150,000 to bring about a repairment of its capital structure. Thereafter on January 22, 1932, the commissioner wrote an official letter to the president of the association notifying him that the deficiency of $150,000 must be made good within sixty days. This action of the commissioner was authorized by section 7.06 of the Building and Loan Act. (Stats. 1931, p. 511.) Thereafter the directors of the association levied an assessment upon the stock, all of which was owned by a holding company, The North American Associated Companies, Ltd. This company refused to pay such assessment. Appellant association now contends that the action of the commissioner in taking over the business, property and assets of the association was based originally upon an illegal order, referring to the letter of January 22, 1932, requiring the appellant association to make good a capital impairment of $150,000 within sixty days. Appellant association claims that this order was illegal for the reason that no proper examination of the books of the association was made by the commissioner previous to the issuance of the order. But there is nothing in the statute to indicate that action by the commissioner pursuant to section 7.06 is necessarily a prerequisite to any action by him under section 13.11. So far as the statute reads, these sections are mutually independent and a noncompliance with an order commanding the restoration of the impaired capital is not a condition precedent to the commissioner's taking possession of the assets under section 13.11. It is, therefore, unnecessary for us to determine whether this prior order of the commissioner was or was not void.

■ Appellant further suggests that the official report of the auditing firm was not placed before the commissioner until after July 8, 1932. There is, however, not the slightest doubt that the substance of the report had been communicated to him, as he had been in close touch with the financial condition of the association and had discussed it with officials of the company. Moreover, Mr. Eadie of the auditing firm had been expressly authorized by letter to discuss with the commissioner the financial condition of the association as his investigation of its condition and its report progressed. This being so, this argument merits little consideration.

■ We find no merit in appellant association's further contention that the *retention* of the business, property and assets of the association by the commissioner was not justified. The statute provides that the commissioner shall retain possession "until such association shall with the consent of the commissioner, resume business, or until its affairs be liquidated. Such association may, with the consent of the commissioner, resume business upon such conditions as may be approved by him." It appears from this language that the commissioner having once rightfully taken possession of the assets of an association, it lies in his sound discretion whether he will retain possession of them or return them upon an approval of some plan of reorganization. The figures of a reorganization plan were presented to the commissioner prior to the taking over of the business, property and assets of the association by him, the fundamental basis of which plan was to organize two separate companies and segregate the "good assets" in one company and the "slow moving assets" in the other company. As long as there was a possibility of the association securing a loan from the Reconstruction Finance Corporation, the commissioner withheld from taking possession of the assets. As soon as it became apparent, however, that the loan which was being negotiated for by the association could not be secured, he took over the association for the purpose of liquidating it. It was his conviction that the association could not be rehabilitated unless some new cash could be secured. Mr. Eadie, the auditor, testified that "a reconstruction loan is essential to a reorganization plan, I think." Under the statute the question of the feasibility of any plan for the reorganization of a building and loan association rests in the sound discretion of the commissioner. Obviously no

plan could guarantee success. At the most, the possibility of the success of such a plan is problematical. The evidence in the instant case is not convincing of the success of the plan proposed. It failed to convince the trial court, and it has failed to convince us. The finding of the trial court, therefore, that the action of the commissioner in retaining possession of said property, business and assets of the association was for the best interest of the association and of its creditors must be upheld.

Finally the appellant association attacks the constitutionality of the provision of the Building and Loan Act authorizing the summary seizure of the assets by the Building and Loan Commissioner as being a deprivation of property without due process of law. Despite the fact that the statute is quite drastic in operation, we are of the opinion, that considering the nature of the business and the need for close supervision of such institutions as shown by the history of building and loan associations especially during the past few years, such provision is not unreasonable, and therefore, not unconstitutional. In *Richardson* v. *Superior Court*, 138 Cal. App. 389, 392 [32 Pac. (2d) 405], it is said: ''The business of a building and loan corporation, like the business of banking, has inherent qualities and characteristics which affect its relation to the public and bring it within the scope of the police power of the state.'' It is apparent from an examination of the statutes that the powers of the superintendent of banks and the Commissioner of Building and Loan Associations are strikingly similar. Evidently the legislature was of the opinion that a fundamental similarity in the two types of institution justified similar supervision by the state. An identical seizure clause in the Bank Act was held constitutional in *State Savings & Commercial Bank* v. *Anderson*, 165 Cal. 437 [132 Pac. 755, L. R. A. 1915E, 675], and affirmed by the United States Supreme Court, 238 U. S. 611 [35 Sup. Ct. 792, 59 L. Ed. 1488]. The Building and Loan Associations are institutions peculiarly patronized by persons of small means whose margin of security and safety from want often consists only of their investments in these associations. It is imperative, therefore, that no speculation or bad business practices should be permitted to jeopardize this security. Experience shows that almost invariably in the liquidation of any association the assets shrink, and it is necessary for the

protection of the owners of shares and investment certificates that the association have some margin of assets over and above the amount necessary to meet its obligations to its creditors and to the holders of shares and investment certificates. The question then arises of how much of a margin is reasonable. The legislature has set it at an amount equivalent to the par value of the stock. We are not prepared to say that such provision is not a proper measure of safety. It must be borne in mind that section 13.11 conferring upon the commissioner this power is to be read in conjunction with section 13.12 which provides that the commissioner's action is subject to immediate judicial inquiry. By said section 13.12 an association is fully protected from any arbitrary and unjust seizure. ▇▇▇ Appellant also makes the contention that the provision of section 13.12 of the Building and Loan Act which permits the commissioner to prosecute an appeal without an appeal bond, whereas such bond is required on the part of the appellant association is unconstitutional. In the case of *Mercantile Trust Co.* v. *Miller,* 166 Cal. 563 [137 Pac. 913], this court held that the superintendent of banks, engaged in liquidation, need not give an appeal bond for the reason that he was acting as a state officer in his official capacity. The same reasoning, undoubtedly, applies to the situation of a Building and Loan Commissioner.

▇▇▇ Although as previously noted, the appellant association appealed from certain orders of the superior court subsequent to judgment, that is to say, from the order refusing to fix a bond on appeal and refusing to deliver the assets to the directors of the association pending the appeal; and from the order refusing to determine the amount of attorney's fees due Joseph Scott, it has advanced no arguments in favor of its appeal from these orders and it must be deemed, therefore, to have waived any rights thereunder. It will not be necessary for us, therefore, to discuss the question of whether or not the trial court erred in making these orders, and the orders thus appealed from are hereby affirmed.

▇▇▇ Previous to the submission of this cause upon its merits a motion was made by the appellant association before this court that the costs of appeal, amounting to $486.80, incurred by said association be allowed said association and

made a charge against the funds of the association now in the hands of the respondent commissioner. In passing upon that motion this court said: "We are of the opinion that this cause should follow the usual and customary course by which the allowance of costs on appeal is made dependent upon the determination of the cause on its merits. . . . The Building and Loan Association Act, *supra*, makes no provision for the advancement or prepayment of costs in a case of this kind. Such costs should abide the determination of the appeal." (*North American B. & L. Assn.* v. *Richardson,* 219 Cal. 685 [28 Pac. (2d) 1044].) While we stated in our opinion that the denial was without prejudice to the consideration of the matter of costs on the disposition of the cause on its merits, the conclusion at which we have arrived requires a denial of said motion at this time. Having determined that the judgment of the trial court should be affirmed, the question of costs in the cause, according to the language of the decision just quoted, must follow the final determination of the appeal. The motion is denied.

After the appellant had perfected its appeal herein, the respondent moved this court to dismiss said appeal or affirm the judgment herein. Our determination of this appeal upon its merits renders it unnecessary for us to pass upon the respondent's said motion.

The judgment is affirmed and the appeal from the order denying the motion for a new trial is dismissed.