**FIDELITY SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, Cross-Appellant,**

v.

**FEDERAL HOME LOAN BANK BOARD, Federal Savings and Loan Insurance Corporation, et al., Defendants-Appellants, Cross-Appellees.**

Nos. 82–4337, 82–4354.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1982.

Decided Sept. 2, 1982.

Rehearing and Rehearing En Banc Denied Nov. 8, 1982.

Barry D. Hovis, Angell, Homes & Lea, San Francisco, Cal., argued, for Fidelity Sav.; Stephen L. Kostka, Van Voorhis & Skaggs, Walnut Creek, Cal., on brief.

Thomas P. Vartanian, Washington, D.C., argued, for Fed. Home Loan Bank Bd.; Jeffrey M. Werthan, Fed. Home Loan Bank

Bd., Washington, D.C., Alan Clark, Latham & Watkins, Los Angeles, Cal., on brief.

Randall P. Borcherding, Deputy Atty. Gen., San Francisco, Cal., argued, for amicus curiae State of Cal.; Joseph G. Passaic, Jr., Federal Deposit Ins. Corp., Washington, D.C., on brief.

Before CHOY, SNEED, and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

This appeal has its origin in a dispute over the appointment of the Federal Savings and Loan Insurance Corporation (FSLIC) as federal receiver for a state-chartered association, Fidelity Savings and Loan Association (Fidelity). The Savings and Loan Commissioner for the State of California (Commissioner) seized Fidelity for the purpose of liquidation and appointed the FSLIC state receiver. Subsequently, the Federal Home Loan Bank Board (Bank Board) appointed the FSLIC federal receiver pursuant to 12 U.S.C. § 1729(c)(2). The Bank Board and the FSLIC, defendants below and appellants here, appeal from the district court's holding that they improperly seized Fidelity and from that court's order for the return of certain assets held by the federal receiver to Fidelity. Jurisdiction in the district court was based on 12 U.S.C. § 1464(d)(6)(A). Our jurisdiction is based on 28 U.S.C. § 1292(b). Because we find that appellants satisfied the statutory requirements for the appointment of a federal receiver, 12 U.S.C. § 1729(c)(2)(A), (C),

we reverse and remand for further proceedings.

## I.

## FACTS AND BACKGROUND

In 1979 Fidelity began experiencing severe financial difficulties as a result of its prior speculative loan commitment practices. Gambling that interest rates would fall, Fidelity had sold large amounts of short-term paper in order to obtain the funds to make long-term mortgage loans at then current market rates. When interest rates rose sharply, Fidelity suffered substantial operating losses and a decrease in net worth because the earnings on its low-yielding portfolio were less than the increasing cost of its short-term borrowing.

To meet its financial obligations, Fidelity borrowed in excess of $1.3 billion from the Federal Home Loan Bank of San Francisco by March 1982.[1] Fidelity's decline caused its depositors to withdraw nearly $70 million in deposits during the week of April 5, 1982. On April 9 the Bank advised the FSLIC that no further loans would be advanced to Fidelity unless the FSLIC guaranteed the loans. The FSLIC declined to advance the loan guarantees, and informed the California Savings and Loan Commissioner of its decision.

In light of Fidelity's precarious financial posture, the Commissioner decided to place the ailing institution in receivership and appoint the FSLIC as receiver for the state. At the close of business on April 13, 1982, state officials physically seized Fidelity by entering its offices in Oakland at approximately 4:40 p.m. and serving Fidelity with papers ordering its liquidation.[2] The Com-

---

1. These loans were made pursuant to a special credit program by which Fidelity was charged interest penalties and higher interest rates than other borrowing institutions. On April 9, 1982, after being notified that the Bank would not extend any more loans to it, Fidelity filed suit against the Federal Home Loan Bank of San Francisco in the Federal District Court for the Northern District of California, No. C82–1389 EFL, seeking recovery of the penalties and excess interest charges. As part of the remedy in the instant case, the district court ordered the

lawsuit transferred from the federal receiver to Fidelity.

2. The Commissioner's order taking possession of the property reads as follows (schedules omitted):

I, LINDA TSAO YANG, Savings and Loan Commissioner of the State of California, pursuant to the authority vested in me under the Savings and Loan Association Law (Financial Code section 5000 et seq.), and in particular section 9001 of the California Financial Code, find that Fidelity Savings and Loan Associa-

tion (sometimes hereafter referred to as "Association"), a corporation organized under the laws of the State of California and licensed by the Savings and Loan Commissioner, is:

(1) In an unsafe condition;

(2) Conducting its business in an unsafe manner;

(3) Conducting its business in an injurious manner.

Each of the above three findings render further conduct of Fidelity Savings and Loan Association's business to be hazardous to the public and its investors.

My findings are based upon facts and information that have been brought to me as a result of an examination by the Department of Savings and Loan of the condition of Fidelity Savings and Loan Association, and of reports received by me, all of which facts and information confirm that Fidelity Savings and Loan Association is in an unsafe condition, is conducting its business in an unsafe and injurious manner such as to render its further proceeding hazardous to the public and its investors. The facts and information underlying the above findings include, but are not limited to, the following:

(a) California Financial Code section 6900 and section 235.48 of the Savings and Loan Commissioner's Regulations (10 Cal. Admin. Code § 235.48) specify that the minimum statutory net worth of a California-licensed savings and loan association shall be three percent (3%) of the average of its total assets as of the end of its last five calendar years. The statutory net worth of Fidelity Savings and Loan Association at March 31, 1982 was 0.93 percent of the average total assets.

(b) The net worth of Fidelity Savings and Loan Association has eroded from $91,600,-000.00 at January 1, 1981 to $19,600,000.00 at March 31, 1982. The net worth of the Association has continued to deteriorate and, if the average monthly operating loss of $5,000,000.00 continues or accelerates, the Association will exhaust its entire net worth on or before July, 1982.

(c) The Association has booked net operating losses of $1,400,000.00 for the year ended December 31, 1980, $57,000,000.00 for the year ended December 31, 1981 and $15,000,-000.00 for the three months ended March 31, 1982.

(d) During the past year the Association has suffered significant outflows of savings deposits, and these outflows were funded by advances (borrowings) from the Federal Home Loan Bank of San Francisco (FHLB). The Association's need for cash funds has greatly increased due to the substantial daily withdrawals of savings deposits and of secured money funds. Exhibit A, attached hereto and incorporated herein, illustrates the savings outflow and the borrowing pattern of the Association. Exhibit B, attached hereto and incorporated herein, illustrates the steady outflow of funds for the week of April 5, 1982.

The Association has total borrowings of $1,409,116,000 from the FHLB as of April 12, 1982. The Association no longer has the ability to borrow from the FHLB and there are no other known sources for the borrowings required for the Association to operate.

There are certificates of deposit and secured money funds, which are obligations of the Association, due to mature on or before April 23, 1982 which total $73,205,000.00. Exhibit C, attached hereto and incorporated herein, illustrates the potential cash needs of the Association through, and including, April 23, 1982. Based on the experience of recent weeks, nearly all of the cash from the certificates of deposit and secured money funds will be withdrawn from the Association as they mature.

(e) The Association has had negative operating spreads since November, 1980. A negative operating spread occurs when the average interest rate paid on savings and borrowings exceed the yield rate on loans and investments. The operating spread at February 28, 1982 is a negative 2.82.

(f) The Federal Savings and Loan Insurance Corporation ("FSLIC") the federal agency that insures accountholders of Fidelity Savings and Loan Association, has requested that the board of directors of Fidelity Savings and Loan Association grant to FSLIC authority to merge Fidelity Savings and Loan Association into another association to protect accountholders and limit the potential liability of FSLIC. That request was refused by the board of directors of Fidelity Savings and Loan Association.

THEREFORE, pursuant to each of said findings, and to the provisions of Section 9001 of the California Financial Code and the Savings and Loan Association Law, I, LINDA TSAO YANG, as Savings and Loan Commissioner of the State of California, hereby make demand to, and do, take possession of the property, business and assets of, Fidelity Savings and Loan Association of California. You are hereby ordered to immediately deliver into my possession, and that of my authorized representatives, the property, business and assets of Fidelity Savings and Loan Association. Refusal to comply with this order is a misdemeanor as provided by Financial Code Section 9005.

The Commissioner's order of liquidation reads as follows:

I, LINDA TSAO YANG, being the duly appointed and qualified Savings and Loan Commissioner of the State of California, and, acting in such capacity; having taken possession of the property, business and assets of Fidelity Savings and Loan Association; and

missioner subsequently appointed the FSLIC as state receiver pursuant to California Financial Code §§ 9009, 9102 (West 1981).[3] At approximately 5:00 p.m., the Bank Board made an independent appointment of the FSLIC as federal receiver pursuant to 12 U.S.C. § 1729(c)(2). This appointment abrogated the Commissioner's ability to control or terminate the receivership. 12 U.S.C. § 1464(d)(6)(A); 12 C.F.R. § 569a.4 (1982). Fidelity's assets were then transferred to a newly created federal mutual association, Fidelity Federal Savings and Loan Association of San Francisco (Fidelity Federal).[4] The entire operation took less than thirty minutes. Fidelity's business was not significantly disrupted.

On April 19, 1982, Fidelity filed this action pursuant to 12 U.S.C. § 1464(d)(6)(A)

for removal of the federal receiver and for such equitable relief as necessary to return Fidelity to the position it occupied prior to the appointment. Fidelity argued that the Bank Board had failed to satisfy the three preconditions for federal intervention under 12 U.S.C. § 1729(c)(2). The district court ordered the trial bifurcated. The first issue to be addressed was whether the Bank Board had satisfied the preconditions for the appointment of a federal receiver set forth in 12 U.S.C. § 1729(c)(2)(A) and (C). The second issue, not yet reached by the district court, is whether the Bank Board satisfied the requirement of 12 U.S.C. § 1729(c)(2)(B) before it appointed the FSLIC as federal receiver.[5]

The district court, 540 F.Supp. 1374, held that the Bank Board had not met the statu-

based on all facts, information and reports available to me, including, but not limited to the facts and information listed as points a. through f. of my Order Demanding And Taking Possession Of Property, Business, And Assets Of Fidelity Savings and Loan Association, which are incorporated herein by reference, do hereby find;

(1) That it would be unsafe, unsound, and injurious to continue the business operations of Fidelity Savings and Loan Association; and

(2) That it is in the best interests of accountholders, investors, and the public that Fidelity Savings and Loan Association be liquidated.

NOW, THEREFORE, pursuant to Article 1 (commencing with section 9000) and Article 3 (commencing with section 9100), Chapter 17, Division 2 of the California Financial Code, I, Linda Tsao Yang, being the duly appointed and qualified Savings and Loan Commissioner of the State of California, and, acting in such official capacity, do hereby order that Fidelity Savings and Loan Association be liquidated.

3. The Commissioner's appointment of FSLIC as receiver reads as follows:

I, LINDA TSAO YANG, being the duly appointed and qualified Savings and Loan Commissioner of the State of California, and, acting in such official capacity, have taken possession of the property, business and assets of Fidelity Savings and Loan Association pursuant to my Order Demanding and Taking Possession of Property, Business and Assets of Fidelity Savings and Loan Association.

The accounts of Fidelity Savings and Loan Association are insured by the Federal Sav-

ings and Loan Insurance Corporation. Based on all the information and reports available to me, I believe it to be necessary and advisable to tender to the Federal Savings and Loan Insurance Corporation the appointment as receiver of Fidelity Savings and Loan Association.

NOW, THEREFORE, pursuant to Financial Code sections 9009 and 9102, I, Linda Tsao Yang, being the duly appointed and qualified Savings and Loan Commissioner of the State of California, and, acting in such official capacity, do hereby tender to the Federal Savings and Loan Insurance Corporation the appointment as receiver for liquidation of Fidelity Savings and Loan Association.

4. With the FSLIC's financial assistance, Fidelity Federal has carried on the business of Fidelity from April 13, 1982 to the present.

5. Section 1729(c)(2)(B) requires that the Bank Board determine that one or more of the grounds specified in 12 U.S.C. § 1464(d)(6)(A) exists before it may appoint the FSLIC federal receiver. These grounds include (i) insolvency in that the assets of the association are less than its obligations to its creditors and others, including its members; (ii) *substantial dissipation of assets or earnings due to* any violation or violations of law, rules, or regulations, or to *any unsafe or unsound practice or practices;* (iii) *an unsafe or unsound condition to transact business;* (iv) willful violation of a cease-and-desist order which has become final; (v) concealment of books, papers, records, or assets of the association or refusal to submit books, papers, records, or affairs of the association for inspection to any examiner or to any lawful agent of the Board. (emphasis added). 12 U.S.C. § 1464(d)(6)(A)(i)–(v).

tory prerequisites for the appointment of a federal receiver. The court found that there had not been a closing under state law and that no depositor had been unable to withdraw his funds. The court ordered the Bank Board to remove the federal receiver and return to Fidelity certain assets in the possession of the federal receiver.[6] This appeal followed.

## II.

### ISSUES TO BE RESOLVED

■ The issues before us are legal; therefore, our review is *de novo*. *First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir. 1982). Substantial deference, however, is ordinarily due a contemporaneous interpretation of the statute by the agency responsible for its administration, as we have before us here. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Sierra Pacific Power Co. v. EPA,* 647 F.2d 60, 65 (9th Cir. 1981). That interpretation by the Bank Board is that the closing and withdrawal requirements of section 1729(c)(2)(A) and (C) are satisfied whenever the FSLIC is appointed as state receiver for the purpose of liquidation.

The statutory setting in which these requirements appear is as follows. The Home Owners' Loan Act, 12 U.S.C. §§ 1461–1468 (1976 & Supp. I 1977), and the National Housing Act, 12 U.S.C. §§ 1701–1750g (1976 & Supp. I 1977), give the Bank Board and the FSLIC regulatory authority over federal savings and loan associations and, to a lesser extent, over state-chartered associations whose accounts are insured by the FSLIC. The FSLIC may become the receiver for a state-chartered savings and loan by one of two means. Section 1729(c)(1) authorizes the FSLIC to accept an appointment by a state to act as state receiver for the purpose of liquidation if a state-chartered association is in default. "Default" is defined by section 1724(d) to mean an adjudication or determination by a proper authority "pursuant to which a conservator, receiver, or other legal custodian is appointed for an insured institution for the purpose of liquidation." Under these circumstances section 1729(c)(1) vests the FSLIC with the same powers given it by section 1729(b) over federally chartered savings and loans, subject to the regulation of the public authority that appointed it. *See* 12 U.S.C. § 1729(d); *Hancock Financial Corp. v. Federal Savings & Loan Insurance Corp.,* 492 F.2d 1325, 1327 (9th Cir. 1974). Section 1729(c)(2) authorizes the Bank Board to "federalize" the receivership of a state-chartered association by appointing the FSLIC receiver (and thus ending state control of the receivership) provided that the section's three statutory preconditions have been satisfied: (1) that either a state receivership has been in place for at least fifteen days or an insured institution has been closed under state law; (2) that at least one ground specified in 12 U.S.C. § 1464(d)(6)(A) exists with respect to such institution; and (3) that a depositor has been unable to make a withdrawal of his account.[7]

---

**6.** Specifically, the assets ordered transferred to Fidelity are a lawsuit against the San Francisco Bank, *see supra* note 1, and a claim for the net worth, if any, of Fidelity on April 13, 1982.

**7.** 12 U.S.C. § 1729(c)(2) provides:
   (2) In the event the Federal Home Bank Board determines—
   (A) that (i) a conservator, receiver, or other legal custodian (whether or not the Corporation) has been or is hereafter appointed for an insured institution which is not a Federal savings and loan association other than by the Board (whether or not such institution is in default) and that the appointment of such

conservator, receiver, or custodian, or any combination thereof, has been outstanding for a period of at least fifteen consecutive days, or (ii) an insured institution (other than a Federal savings and loan association) has been closed by or under the laws of any State;
   (B) that one or more of the grounds specified in paragraph (6)(A) of section 1464(d) of this title, existed with respect to such institution at the time a conservator, receiver, or other legal custodian was appointed, or at the time such institution was closed, or exists thereafter during the appointment of the con-

The exclusive means for contesting the appointment of the FSLIC as federal receiver under section 1729(c)(2) is provided by 12 U.S.C. § 1464(d)(6)(A), made applicable by 12 U.S.C. § 1729(c)(3)(A).[8] This section authorizes the district court to conduct a hearing "upon the merits" concerning the propriety of the appointment of the federal receiver under 12 U.S.C. § 1729(c)(2). Upon a finding that one or more of the conditions for appointment of the federal receiver have not been satisfied, the district court shall order the Bank Board to remove the FSLIC as federal receiver.

This case, therefore, turns on whether the "closing" and the "withdrawal" requirements of sections 1729(c)(2)(A) and (C) were satisfied. We hold that each should be resolved by finding that the requirement has been satisfied.

### III.

### CLOSING OF FIDELITY UNDER CALIFORNIA LAW

A. *Power To Close Under California Law*

The district court held that no closure occurred within the meaning of section 1729(c)(2)(A). It reasoned that the Commissioner had no express or implied power to close Fidelity under California law. In addition, the district court found that even if it were to imply the power to close Fidelity from California Financial Code § 9010, the Commissioner, under California law, was stayed from exercising the power for ten days following seizure in order to allow the association to seek judicial review. We disagree.

The Commissioner may take possession of a savings and loan association operating in an unsafe or injurious manner and conduct its business until control is returned to the association or the association's affairs are liquidated. Cal. Fin. Code §§ 9001, 9002, 9011 (West 1981); *Pacific States Savings & Loan Co. v. Hise,* 25 Cal.2d 822, 835–36, 155 P.2d 809 (1945) (en banc). Admittedly, no provision in the Financial Code expressly states that the Commissioner may close an association. The California Supreme Court, however, has broadly construed the statutory powers of the Commissioner. *Evans v. Superior Court,* 20 Cal.2d 186, 190–91, 124 P.2d 820 (1942) (*Evans II*); *Evans v. Superior Court,* 14 Cal.2d 563, 572, 96 P.2d 107 (1939), *appeal dismissed,* 309 U.S. 640, 60 S.Ct. 893, 84 L.Ed. 995 (1940) (*Evans I*); *Wilson v. Superior Court,* 2 Cal.2d 632, 635–37, 43 P.2d 286 (1935). Recognizing the legislature's intent to provide a comprehensive plan for supervising state savings and loans, *Trede v. Superior Court,* 21 Cal.2d 630, 633–34, 134 P.2d 745, *cert. denied, Pacific States Savings & Loan Co. v. Trede,* 320 U.S. 739, 64 S.Ct. 39, 88 L.Ed. 438 (1943), the California Supreme Court has found that the Commissioner has implied powers beyond the express provisions of the statutes substantially similar to those of a trustee of private property. *See Evans I,* 14 Cal.2d at 572–73, 96 P.2d 107. The power to close an association surely is among the powers properly implied from the Commissioner's power to take possession of an association for the purpose of liquidation.

California Financial Code § 9010 also supports this result. It provides that the Commissioner may take "such other acts as are necessary or expedient to collect,

---

servator, receiver, or other legal custodian or while the institution is closed; and

(C) that one or more of the holders of withdrawable accounts in such institution is unable to obtain a withdrawal of his account, in whole or in part;

the Board shall have exclusive power and jurisdiction to appoint the Corporation as sole receiver for such institution.

**8.** 12 U.S.C. § 1464(d)(6)(A) provides:

The Board shall have exclusive power and jurisdiction to appoint a conservator or receiver.... In the event of such appointment, the association may, within thirty days thereafter, bring an action in the United States district court ... for an order requiring the Board to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver.

conserve, or protect the association's business, property, and assets." *See also* Cal. Fin. Code § 5250. To conserve effectively a failing association's assets, the Commissioner must have the power to close an association when in her discretion it is necessary.[9]

■ Furthermore, where the FSLIC has been appointed state receiver by the Commissioner, as in this case, a reasonable interpretation of Financial Code § 9103 is that the FSLIC has the power to close a state-chartered savings and loan association. This is true because section 9103 provides that the FSLIC shall have all the powers and be subject to all the duties of the Commissioner, "and in addition shall have all the rights, privileges and powers conferred upon it by federal statutes now or hereafter enacted." California law thus incorporates all federal law concerning the powers of the FSLIC as receiver. Where the FSLIC has been appointed for the purpose of liquidation, federal law authorizes it to "take such action as may be necessary to put [the association] in a sound and solvent condition, . . . or . . . to proceed to liquidate its assets in an orderly manner." 12 U.S.C. § 1729(b); *see also* 12 U.S.C. § 1729(d); 12 C.F.R. §§ 549.3, 569a.6 (1982).[10] The FSLIC's power to liquidate "in an orderly manner" necessarily includes the power to close a savings and loan, a power given by federal law and explicitly incorporated into California law by section 9103.

■ We also disagree with the district court's holding that closure on April 13, 1982, was precluded by Financial Code § 9003, which provides an automatic ten-day stay of liquidation following the taking possession of an association by the commissioner.[11] In *Evans II*, the California Supreme Court stated that the thirty-day stay period authorized by California Financial Code § 13.12, the predecessor to Financial Code § 9003, "is provided as an automatic stay of the exercise of the powers of liquidation by the Commissioner, *as distinguished from a stay of the process of liquidation*, in order to give the association an opportunity to obtain an injunction" (emphasis added). 20 Cal.2d at 189, 124 P.2d 820 (dictum). This distinction appears to be aimed at safeguarding the right to a review in the state court while at the same time recognizing the existence of those powers necessary to protect the assets from further deterioration and impairment pending such review. Thus, seizure of an association and the holding of its assets is a part of the *process* of liquidation. 20 Cal.2d at 189, 124 P.2d 820. *See also Trede*, 21 Cal.2d at 634, 134 P.2d 745 (right of Commissioner to liquidate association is delayed pending the outcome of suit challenging Commissioner's actions); *State Savings & Commercial Bank v. Anderson*, 165 Cal. 437, 447–48 (1913), *aff'd mem.*, 238 U.S. 611, 35 S.Ct. 792, 59 L.Ed. 1488 (1915) (parallel provision of Bank Act allows superintendent to take temporary custody of bank pending action challenging superintendent's findings).

It is true, however, that *Evans II* did not address the question whether "closing" is to be regarded as part of the *power* of liquidation rather than the *process* of liquidation.

9. California law also recognizes the power of the California Superintendent of Banks to close banks, although there is no express statutory authorization for such power. *State Sav. & Commercial Bank v. Anderson*, 165 Cal. 437, 446, 132 P. 755 (1913), *aff'd mem.*, 238 U.S. 611, 35 S.Ct. 792, 59 L.Ed. 1488 (1915); Cal. Fin. Code § 3100. This authority is significant in light of the fundamental similarity between banks and savings and loans and their parallel supervision by the state. *North Am. Bldg. & Loan Ass'n v. Richardson*, 6 Cal.2d 90, 101, 56 P.2d 1221 (1936).

10. Where the FSLIC is appointed state receiver under section 1729(c)(1), it has the same powers and duties conferred upon it when acting as a federal receiver for federally chartered savings and loans under 12 U.S.C. § 1729(b). 12 U.S.C. § 1729(c)(1).

11. Section 9003 provides:

Whenever the commissioner takes possession of an association's property, business, and assets pursuant to this article, the association may within 10 days after the taking of possession commence an action in the superior court of the county in which the principal office of the association is located, to enjoin further proceedings.

20 Cal.2d at 189, 124 P.2d 820. We believe the latter is the more apt characterization. Because "closing" sequentially must precede the definitive acts of liquidation and frequently will be necessary to preserve the assets, closing should be viewed as part of the *process* of liquidation under California law. So regarded, a closing is not subject to an automatic stay.[12] *Cf. Title Guaranty & Surety Co. v. Idaho,* 240 U.S. 136, 141–42, 36 S.Ct. 345, 346, 60 L.Ed.2d 566 (1916) (distinguishing "closing" from "liquidation" for purposes of the Due Process Clause of the Fourteenth Amendment). An automatic ten-day stay of the Commissioner's power to close an association following its seizure could result in a run on the association that would impair or destroy the Commissioner's ability to protect association assets in the interest of creditors and claimants pending liquidation of an insolvent association. Cal. Fin. Code § 9010; *Trede,* 21 Cal.2d at 633–34, 134 P.2d 745.

■ This interpretation fully satisfies the requirements of procedural due process. *North American Building-Loan Ass'n v. Richardson,* 6 Cal.2d 90, 101, 56 P.2d 1221 (1936). The post-seizure review provided by section 9003 affords a constitutionally proper procedure. Allowing the Commissioner to close the association before ten days have passed not only is sensible but also constitutionally impeccable. Thus, the FSLIC acting as state receiver had the power under California law to close Fidelity immediately upon taking possession.[13]

12. We do not reach the question whether § 9003 requires an automatic 10-day stay of exercise of the *power* of liquidation.

13. In the alternative, state law may not be dispositive of compliance with § 1729(c)(2)(A)(ii). In *Tel. Sav. & Loan Ass'n v. FSLIC,* No. 80 C 2792, slip op. at 13–14 (N.D. Ill., June 9, 1981), the district court concluded that the closing requirement of 12 U.S.C. § 1729(c)(2)(A) is met whenever an association is closed by the state regardless of the validity of that closing under state law. The legislative history of § 1729(c)(2) supports this reading of the statute. The Senate Report states:

### B. *Actual Closure*

■ The district court also held that the closure requirement of section 1729(c)(2)(A)(ii) was met only when an association "actually closed its doors to the public." A "CIA-like operation where the FHLBB orchestrates a neat five-minute 'closure'" was not sufficient. Excerpt of Record C.T. 101 at 13. Fidelity urges us to adopt the district court's approach, arguing that a closing under section 1729(c)(2)(A)(ii) requires a significant disruption in the services of a state savings and loan association. The Bank Board and the FSLIC, on the other hand, assert that whenever the FSLIC is appointed as state receiver for the purpose of liquidation the closing requirement is satisfied. Neither the statute nor the legislative history offer definitive guidance. For the reasons that follow, we hold that when the Commissioner both appoints the FSLIC as state receiver and issues an order liquidating the state institution, the closing requirement of section 1729(c)(2)(A) is satisfied.

The enactment of section 1729(c)(2) by Congress was in response to the refusal of Illinois banking officials to cooperate with federal authorities after the collapse of the Marshall Savings and Loan Association in 1965. There state officials dealt with the association's financial difficulties by taking custody of the association and suspending all withdrawals for over three months. State custody was aimed at conserving shareholder assets rather than for the purpose of liquidation. FSLIC insurance payments could not be made until a receiver

> The effect of the legislation would be to enable the FSLIC to defend its appointment under Federal law instead of requiring it to defend the legality of the State savings and loan administrator's determinations under State law.

S. Rep. No. 1263, 90th Cong., 2d Sess. 11, *reprinted in* 1968 U.S. Code Cong. & Ad. News 2530, 2540. This statement evidences a congressional judgment that the effectiveness of a federal receivership depends on its being tested under uniform federal law. Given our interpretation of California law, however, we need not rely on this reading of the statute. We need not, however, rely on this reading of the statute based upon our interpretation of California law.

had been appointed for the purpose of liquidation, thus placing the association in default. 12 U.S.C. §§ 1724(d), 1728(b). Therefore, the FSLIC was powerless to provide insurance payments to depositors during the three-month period preceding the state's appointment of a receiver for liquidation, even though the depositors had been denied access to their savings. This inability to promptly reimburse depositors jeopardized public confidence in the savings and loan industry. S. Rep. No. 1263, 90th Cong., 2d Sess. 7, 8, 11, *reprinted in* 1968 U.S. Code Cong. & Ad. News 2530, 2536, 2537, 2540 (hereinafter S. Rep.).

Because the State of Illinois did not appoint the FSLIC receiver for liquidation, the FSLIC was unable to manage the association's assets in such a way as to recoup the federal insurance fund payout. The state-appointed receiver denied the FSLIC access to the association's financial records, allowed the association's assets to deteriorate, and failed to reimburse the FSLIC for any portion of the insurance payments made to its depositors. The FSLIC ultimately lost $83 million in insurance payments and $12 million more in foregone interest. S. Rep. at 2536–37.

Section 1729(c)(2) was designed, generally speaking, to deal with this type of situation, in which at the time the state official has custody of the assets a state of hostility exists between the official and the FSLIC. More specifically, it was designed to heighten public confidence in the savings and loan industry by ensuring prompt insurance payouts to savers and to safeguard the financial integrity of the FSLIC by providing it with a means to "federalize" a hostile state receivership.[14] Under section 1729(c)(2) "federalization" is possible even when the state receivership is not for the purpose of liquidation. S. Rep. at 2539–40. At the same time, Congress recognized a legitimate and competing state interest in regulating state-chartered associations. A balance was struck by dividing the responsibility for regulation of state savings and loan associations between the states and the federal government. *See* S. Rep. at 2538. The requirements of a closure under state law and a determination of depositor inability to withdraw funds were meant to safeguard the state receivership from premature federal intervention.

Although the primary purpose of section 1729(c)(2) is reasonably clear, its language plainly applies beyond the narrow Marshall Savings and Loan context. The Marshall episode represented a "hostile" situation. The present case presents a different situation. The State Commissioner has acted to further Bank Board and FSLIC objectives by appointing the FSLIC state receiver. Thus, the relationship between the State of California and the FSLIC may appropriately be described as nonhostile. The withdrawal by the Commissioner of her appointment of the FSLIC on July 27, 1982 does not alter this characterization.[15]

14. Senator Bennett stated:
The bill has two purposes. The first ... authorizes the Federal Savings and Loan Insurance Corporation to make *immediate payment to savers* having shares in a savings and loan institution *closed by State authorities* .... The second purpose of the bill is to provide for the appointment of the Federal Savings and Loan Insurance Corporation as a receiver *in any instance where it is required to use insurance funds* of the Corporation to meet its liability to the State institution's savers.
114 Cong. Rec. 11,725 (1968) (emphasis added).

15. In her Order terminating the appointment of FSLIC as state receiver, the validity of which is not before us, the Commissioner recited the circumstances which in her view made the removal of the FSLIC appropriate. These included the fact that as federal receiver the FSLIC had sold and transferred substantially all of the assets and liabilities of Fidelity to a new federal mutual savings and loan association (Fidelity Federal), *and that consequently no depositor's* funds were now at risk. Order of Linda Tsao Yang, Savings and Loan Commissioner of the State of California, Removing State Receiver and Extinguishing State Receivership (July 27, 1982), attached to Letter from Thomas P. Vartanian, General Counsel, Federal Home Loan Bank Board, to Philip B. Winberry, Clerk, United States Court of Appeals for the Ninth Circuit (Aug. 9, 1982) (filed Aug. 10, 1982). We infer from the wording of the Commissioner's order that the goal of safeguarding depositor funds was a motivating factor in her original decision to cooperate with the Bank Board by appointing FSLIC state receiver.

In the nonhostile situation the state's interest is served by advancing the federal interest. No fundamental difference in objectives exists between the two. State officials have invited federal intervention by choosing to appoint the FSLIC state receiver and ordering the association's liquidation. No need to protect the state from unwanted federal meddling exists. Compliance with the preconditions of closure and withdrawal inability inescapably becomes substantially a ceremonial formality.

The district court would require an actual physical closure of the doors of the association for at least more than five minutes. Perhaps closure for one-half day would suffice. To require a closure of that duration under the circumstances of this case is to insist upon an empty ceremony. The formalities that attended the issuance by the Commissioner of her liquidation order and the appointment of the FSLIC as state receiver amply validated the utility of federal intervention. To require additional validation consisting of a ceremonial closure and denial of withdrawal by at least one depositor whose appearance is prearranged by the Commissioner and the Board is to require enactment of a farce. To the extent closure and denial of withdrawal are required not to be by prearrangement, the rule imposes upon the relevant financial community an unnecessary risk of depositor panic.

Section 1729(c)(2) should not be interpreted to require either the incurring of this risk or the performance of empty ceremonies. Therefore, we hold that the issuance of a liquidation order and the appointment of the FSLIC as state receiver of Fidelity by the Commissioner achieved a closure within the meaning of section 1729(c)(2)(A). The State of California, appearing as amicus curiae, acknowledges that had the Commissioner's liquidation order specifically included a provision closing Fidelity, any basis for insisting that the closure requirement was not met would be removed. However, inasmuch as the language of the Commissioner's order tracked the language of the California statute which, as already demonstrated, empowers closure, its omission from the order is not significant.

We recognize that we are interpreting section 1729(c)(2) teleologically, not literally. That is, our interpretation is guided by a desire to fit the section to nonhostile situations in which the Bank Board and the state authority concur in the need to accomplish quickly and smoothly the imposition of a federal receivership of a state savings and loan association. To frustrate this joint desire by insistence upon ceremonies that are meaningless, at best, and financially dangerous, at worst, strikes us as unwise.

We reach this conclusion although insistence upon these ceremonies would serve to enhance the analytic meshing of subsection 1729(c)(1) and (c)(2). Under our interpretation, appointment of the FSLIC as receiver by the appropriate state authority upon "default" of a state savings and loan association can be converted from a receivership under state law to one under federal law quite easily. The section 1729(c)(1) requirement of "default" can be counted upon to supply the section 1729(c)(2) elements of closure and inability to withdraw in most instances. It can be argued that only by insistence upon ceremonial closure and denial of withdrawal, at the very least, can the intent of Congress expressed in enacting section 1729(c)(2) be harmonized with, and made sufficiently independent of, section 1729(c)(1). An even broader argument would be that section 1729(c)(2) is only available in the "hostile" situation such as existed with respect to the Marshall Savings and Loan Association. We reject these arguments. To us promulgation of a liquidation order by proper state authority under state law that authorizes immediate closure joined with appointment of the FSLIC as state receiver permits federalization of the receivership by the Board, if it should choose to do so, provided the preconditions of section 1729(c)(2)(B) also exist. The language of the statute permits our interpretation and it does no disservice to the interests of depositors for whose protection the FSLIC exists.

Our interpretation also does no harm to the states. The appropriate state authority

need not promulgate the liquidation order nor appoint the FSLIC as receiver. The fact that the Board may urge strongly that the state authority issue these orders alters nothing. It is within the state's power to refuse and to force into existence the literal fulfillment of the closure and inability to withdraw preconditions to federal intervention. That this might be a very imprudent thing for the state to do merely strengthens the case for the interpretation we give the statute.

■ Nor does our interpretation impose upon the shareholders of a state savings and loan association a deprivation of due process. The precondition set forth in section 1729(c)(2)(B), which requires that proper grounds for the intervention exist, assures stockholders that federal intervention was proper. Under the circumstances of the case and in light of the importance to society of preserving faith in our financial institutions, we hold, in a manner similar to our analysis of California law, that a post-intervention hearing with respect to the propriety of the grounds for federal intervention amply satisfies the shareholders' right to procedural due process. *Fahey v. Mallonee,* 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1554–56, 91 L.Ed. 2030 (1947) (appointment of conservator for savings and loan by Bank Board under Home Owners' Loan Act); *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 299–300, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981) (citing *Fahey*); *Parratt v. Taylor,* 451 U.S. 527, 538–39, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981) (same).

## IV.

### DEPOSITOR INABILITY TO WITHDRAW

■ Our approach to the requirement of closure foreshadows our view of the district court's holding that because the Bank Board could not identify any depositor who was unable to withdraw funds from his account, the withdrawal requirement of section 1729(c)(2)(C) was not satisfied. We reject this holding. Section 1729(c)(2)(C)

does not require that an account holder *actually be denied* a withdrawal; it only requires that the Bank Board determine that an account holder is *"unable"* to make such a withdrawal. The Bank Board properly so determined in this case. The required inability follows logically from the conclusion that Fidelity was closed.

Logic alone, however, need not carry the full burden of this conclusion. We have already indicated that under the circumstances of this case a ceremonial denial of withdrawal by one or more accountholders would serve no useful purpose. Thus, proceeding as we did in our treatment of the closure requirement, we hold that when the Commissioner promulgated her liquidation order and her appointment of the FSLIC as state receiver, and the Board accepted the appointment, the requirement of inability to withdraw was met. We believe that Congress did not intend to require a ritualistic and potentially harmful disruption of business as a prerequisite to a federal receivership where the state has, by appointing FSLIC receiver, manifested its desire to yield control to and cooperate with the Bank Board. Here, as in connection with the closure precondition, we reject possible more narrow interpretations of section 1729(c)(2). We therefore find that the withdrawal requirement was satisfied in this case.

## V.

### DISPOSITION

In light of our holdings in this case, we need not consider Fidelity's cross-appeal from the district court's refusal to require appellants to extend the same loans and guarantees to Fidelity that were made available to its successor, Fidelity Federal. The judgment of the district court, 540 F.Supp. 1374, is reversed. We remand to the district court for further proceedings consistent with this opinion and specifically to allow consideration of the question whether any one of the conditions required by 12 U.S.C. § 1729(c)(2)(B) existed prior to the Bank Board's appointment of the FSLIC receiver.

REVERSED and REMANDED.